[S. F. No. 11748.   In Bank.—March 1, 1926.]

CITY OF OAKLAND (a Municipal Corporation), Petitioner, v. THE INDUSTRIAL ACCIDENT COMMISSION, Respondent.

[1] WORKMEN'S COMPENSATION ACT — INJURY TO MUNICIPAL BARGE EMPLOYEE—JURISDICTION.—Where it cannot be said that either a person's general employment as a civil service employee of the City of Oakland or his activities at the time he was injured—he having been injured while working as a deck-hand or donkeyman on an anchor barge, or scow, used as a tender to a municipal dredger owned and operated by said city for the purpose of deepening the channel in the Oakland estuary and in the bay of San Francisco, and at the time of the injuries it having been tied up at one of the city's municipal wharves, and was afloat upon the navigable waters of the estuary, and the accident having happened while the crew was making preparations for the day's work, and preliminary to the barge being towed to such places along the shore as might be required—has any direct relation to navigation or commerce, the exclusive features of the Workmen's Compensation Act apply and abrogate any remedies the injured employee would have under the general admiralty jurisdiction.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission.   Award affirmed.

The facts are stated in the opinion of the court.

Leon E. Gray, City Attorney, and Markell C. Baer, Assistant City Attorney, for Petitioner.

Warren H. Pillsbury for Respondent.

WASTE, C. J.—Charles Paul, a civil service employee of the City of Oakland, a municipal corporation, was injured while working as a deck-hand or donkeyman on an anchor barge, or scow, used as a tender to a municipal dredger owned and operated by the city.   The dredger was, from time to time, employed for the purpose of deepening the

---

1.   See 28 R. C. L. 730.

198 Cal.—18

channel in the Oakland estuary and in the bay of San Francisco. The barge was used in stringing out tow-lines and hoisting anchors, and in transporting such material as was necessary. It was capable of being towed anywhere about the bay, or even beyond the Golden Gate. At the time of the injury to Paul, it was tied up at one of the city's municipal wharves, and was afloat on the navigable waters of the estuary. At 8 o'clock on a morning while the crew was making preparations for the day's work, and preliminary to the barge being towed to such places along the shore as might be required, Paul was injured while engaged in cutting wood for the purpose of supplying fuel for a boiler on board. On application by the injured employee, the respondent, Industrial Accident Commission, made an award of compensation, and the cause comes to this court on a writ of review to determine whether or not it has jurisdiction in the premises.

[1] The contention of the City of Oakland, which is its own insurance carrier, is that the injury was of a maritime character, and that therefore the application of the state Workmen's Compensation Act (Stats. 1917, p. 831) was excluded by the paramount force of the Law Maritime of the United States. The respondent Commission was at first of the same mind, and dismissed the application for an adjustment of compensation. On rehearing, it assumed jurisdiction, and made an award. Two theories are advanced by it in support of its final action. Its first contention is that Paul's employment and injury were nonmaritime, in that neither had any direct relation to navigation or commerce (citing *Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469 [25 A. L. R. 1008, 66 L. Ed. 321, 42 Sup. Ct. Rep. 157, see, also, Rose's U. S. Notes]). Petitioner relies upon certain decisions of this court as sustaining a contrary view. It was held in *Zurich etc., Insurance Co., Ltd., v. Industrial Acc. Com.,* 191 Cal. 770 [218 Pac. 563], that the Industrial Accident Commission of California did not have jurisdiction in the case of a deck-hand on a dredger and launch operator, whose work was performed mainly in connection with a privately owned dredger operating on navigable waters, and who was drowned while driving a launch from the dredger to the shore while engaged upon an errand in connection with his employment. It was conceded, in fact during the oral argument it was stipulated, in that case that

the employment of Denny at the time of his death was of maritime nature. (See, also, *Alaska Packers Assn.* v. *Industrial Acc. Com.,* 191 Cal. 763 [218 Pac. 561], and *James Rolph Co.* v. *Industrial Acc. Com.,* 192 Cal. 398 [220 Pac. 669].) Petitions of the Industrial Accident Commission to the supreme court of the United States for a writ of *certiorari* to this court in the Alaska Packers case and in the Zurich Insurance Co. case were denied. Subsequently, on a writ of error in the Rolph Co. case, the decision of this court, that the Industrial Accident Commission had no jurisdiction to award compensation for the death of a workman killed while actually engaged in maritime work, under a maritime contract, upon a vessel moored to her dock in San Francisco bay, and discharging her cargo, was affirmed (264 U. S. 219 [68 L. Ed. 646, 44 Sup. Ct. Rep. 302]). When these decisions are correctly understood it is at once apparent that actual engagement by the injured employee in maritime work, under a maritime contract, were the distinguishing features of each of the cases. They do not decide the question here presented.

*Grant Smith-Porter Ship Co.* v. *Rohde, supra,* relied on by the respondent, lays down the rule to be followed under the facts here present. That was a proceeding in admiralty to recover damages from a shipbuilder for injuries which a carpenter received while working on an unfinished vessel moored in the Willamette River at Portland, Oregon. The questions presented were determined on a certificate from the court below stating the facts to the supreme court of the United States. That court said that the contract for constructing the boat "was non-maritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time, had any direct relation to navigation or commerce"; and as the matter was only of local concern, to permit the rights and liabilities of the parties to be determined by the local law would not interfere with the characteristic features of the general maritime rules. Therefore, it held (p. 478) that, while general admiralty jurisdiction extended to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction when lying in navigable waters within a state, under the circumstances stated, the "exclu-

sive features of the Oregon Workmen's Compensation Act would apply and abrogate the right to recover damages in the admiralty court which otherwise would exist.'' Another, and the latest, decision of the supreme court of the United States on this subject (*Miller's Indemnity Underwriters* v. *Braud* (U. S.), 70 L. Ed. 211 [46 Sup. Ct. Rep. 194]), also supports the contention of the Industrial Accident Commission. In that case the decedent, while employed as a diver, submerged himself from a floating barge anchored in navigable waters near the bank of the river for the purpose of sawing off the timbers of an abandoned set of ways, once used for launching ships, which had become an obstruction to navigation. While thus submerged the air supply failed and he died of suffocation. The courts of Texas affirmed an award of compensation made under the Workmen's Compensation Law of that state, and, on writ of error, the case went to the supreme court of the United States. In its decision that court again points out that matters which are not of mere local concern because of their special relation to commerce and navigation are beyond the regulatory power of the state (citing cases); but holds that as to certain local matters, regulation of which will work no material prejudice to the general maritime law, the rules of the latter may be modified or supplemented by state statutes. The decision of the supreme court of Texas sustaining the award was accordingly affirmed, for the reason, said the court, that ''the record discloses facts sufficient to show a maritime tort to which the admiralty jurisdiction would extend save for the provisions of the state Compensation Act; but the matter is of mere local concern and its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law.'' So, in the case at bar, there is nothing in the record from which it can be said that either Paul's general employment as a civil service employee of the City of Oakland, or his activities at the time he was injured, had any direct relation to navigation or commerce. We are of opinion, therefore, that, under the circumstances stated, the exclusive features of the Workmen's Compensation Act of the state apply and abrogate any remedies the injured employee would have under the general admiralty jurisdiction. (*Grant Smith-Porter Ship Co.* v. *Rohde, supra; Miller's Indemnity Underwriters* v.

*Braud, supra.*)   On the authority of these decisions we are satisfied that to permit the rights and liabilities of the parties to this proceeding to be determined by the respondent Commission, under the provisions of the Workmen's Compensation Act, will not in any way interfere with the characteristic features of the general maritime rules.

The second theory on which the Industrial Accident Commission assumed jurisdiction of this matter is that the City of Oakland, being but a political subdivision of the state, cannot attack the right of the state to make the provisions of the Workmen's Compensation Act applicable to all its employees.   It contends that it was decided by the supreme court of the United States in a very recent case (*City of New York* v. *McEntee et al.*, 263 U. S. 688 [68 L. Ed. 507, 44 Sup. Ct. Rep. 229]), that a municipality is not entitled to invoke the protection of the federal maritime law in opposition to the law of the state of its creation, for the reason that the state is under no restriction from the federal constitution or laws in regulating the rights and duties of state and municipal employees.   The petitioner stoutly resists this contention, and raises many points in opposition to the theory of the respondent.   For two reasons we are not disposed to enter into a consideration of the issue thus presented.   The first is that the conclusion we have reached (*supra*), that, because of the purely local nature of Paul's employment, the exclusive features of the state Compensation Act apply to the case, renders it unnecessary to determine the second contention raised.   The second reason is that, while we have been unofficially given the facts involved in the McEntee case, which show a similitude to those of the case at bar, the court rendered only a *"per curiam* decision," dismissing the proceeding "for the want of jurisdiction" on the authority of four of its previous decisions. None of these has any direct relation to the question we are here asked to consider.   We therefore deem it unwise to attempt to apply the McEntee case to this proceeding.

The award of the Industrial Accident Commission is affirmed.

Richards, J., Seawell, J., Shenk, J., Lawlor, J., Curtis, J., and Lennon, J., concurred.

Rehearing denied.