LA CASSE *v.* GREAT LAKES ENGINEERING WORKS.

1. ADMIRALTY—REPAIR OF SHIPS IN SLIP ON DETROIT RIVER MARITIME CONTRACTS—COURTS.

    The Detroit river, being a connecting stream of the Great Lakes, is navigable water within the jurisdiction of the admiralty courts, and a slip thereon used for the repairing of ships partakes of the nature of the main river, so that maritime transactions therein are subject to maritime law.

2. MASTER AND SERVANT — ADMIRALTY — WHEN WORKMEN'S COMPENSATION ACT APPLIES.

    If an injury to an employee occurs on navigable waters and in the performance of a maritime contract, it is within the exclusive jurisdiction of admiralty, and the State workmen's compensation act would not apply unless: (*a*) The contract is of merely local concern; and (*b*) its performance has no direct effect upon navigation or commerce; and (*c*) the application of the State law would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.

3. SAME — NAVIGABLE WATERS — NONMARITIME CONTRACT PRIMA FACIE LOCAL.

    If an injury to an employee occurs on navigable waters, but in the performance of a nonmaritime contract, it is at least *prima facie* local and within the operation of the State workmen's compensation act.

4. SAME—CONSTRUCTION OF NEW SHIP NONMARITIME—REPAIR OF USED SHIP MARITIME CONTRACT.

    The construction of a new vessel is a nonmaritime contract, but the repair of a once-completed ship is a maritime contract.

5. SAME—REPAIR OF USED SHIP NOT LOCAL MATTER.

    The repair of a vessel has a direct relation to commerce and navigation and is not a local matter, and no distinction

---

[1]Admiralty, 1 C. J. § 34; [2]Workmen's Compensation Acts, C. J. § 32; [4]Admiralty, 1 C. J. § 88; L. R. A. 1917D, 88; 11 A. L. R. 1155; 25 A. L. R. 1029; 31 A. L. R. 518; 28 R. C. L. 731; 4 R. C. L. Supp. 1840; 5 R. C. L. Supp. 1556; 6 R. C. L. Supp. 1745; 7 R. C. L. Supp. 998.

has been made by the courts between the repair of a vessel withdrawn from service for extensive overhauling and one in actual commission or being fitted for a specific voyage.

6. Same—Workmen's Compensation Act Not Applicable Where Employee Injured in Repairing Ship.

An employee of a company engaged in building and repairing ships, who was injured while assisting in making "general repairs" to a ship in a slip in the Detroit river, was engaged in a maritime transaction, and, therefore, the State workmen's compensation act is not applicable thereto; the admiralty courts having exclusive jurisdiction.

Certiorari to Department of Labor and Industry. Submitted January 11, 1928; resubmitted March 27, 1928. (Docket No. 23.) Decided June 4, 1928.

Mary La Casse presented her claim for compensation against the Great Lakes Engineering Works for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant and the Standard Accident Insurance Company, insurer, bring certiorari. Reversed and order vacated.

*Lightner, Oxtoby, Hanley & Crawford,* for appellants.

*Woodruff & Woodruff* (*Frank W. Atkinson,* of counsel), for appellee.

Fead, C. J. On October 28, 1926, Moses La Casse, an employee of defendant Great Lakes Engineering Works, was injured while pursuing his work as ship carpenter. He later died from the injury. An award of compensation to plaintiff, his widow, was made by the department of labor and industry and is here for review on certiorari.

The Great Lakes Engineering Works is engaged, among other things, in building and repairing ships.

On its own property a slip had been dredged, running back from the Detroit river a distance of 600 feet or more.    The slip was used for floating dry docks and for all sorts of ship repairing.

Decedent had been a ship carpenter in defendant's yard for some 20 years.    About two weeks before his death he commenced work on the steamer Roumania lying in defendant's slip.    At the time of the accident he stood on a contrivance floating on the water alongside the ship.    He was attempting to nail a plank to the side of the vessel when he was injured.

The Roumania was 35 to 38 years old, probably of Michigan registry, and had been carrying automobiles between Detroit and Toledo or Cleveland.    The record does not show what future plans for her the owners had nor who the owners were nor how long the ship had been disabled.    She was being "rebuilt," had come into the slip about a month previously for "general repairs," been moved to the dry dock and then put back into the slip again; her spar was off, the smoke stack had been taken down and not yet replaced, the after cabin had been torn down to permit work on the engine, the engine had been removed, and another one put aboard ship but not yet installed, although a foundation for it had been constructed; some planking was being done, and the ship was floating on her own keel.

The sole question is whether the workmen's compensation law of the State is applicable to such an injury or whether jurisdiction is exclusively in the Federal courts under the maritime law of the United States, by virtue of article 3, § 2, of the Constitution of the United States.

The Detroit river, being a connecting stream of the Great Lakes, is navigable water within the jurisdiction of the admiralty courts.    *Foppen* v. *Peter J. Fase & Co.*, 219 Mich. 136, and cases cited.    The de-

fendant's slip, as far as it is used in maritime work, partakes of the nature of the main river, and maritime transactions therein are subject to maritime law. *The Robert W. Parsons,* 191 U. S. 17 (24 Sup. Ct. 8) ; *Northern Pacific Steamship Co.* v. *Shipbuilding Co.,* 249 U. S. 119 (39 Sup. Ct. 221) ; *O'Hara's Case,* 248 Mass. 31 (142 N. E. 844) ; *Danielsen* v. *Morse Dry Dock & Repair Co.,* 235 N. Y. 439 (139 N. E. 567).

The authorities upon the application of State workmen's compensation acts to injuries sustained on navigable waters are numerous, but they all revolve around a few outstanding Federal cases.

The basic case is *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 217 (37 Sup. Ct. 524, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900), in which the Supreme Court of the United States held that maritime jurisdiction was exclusive in a situation where a workman, operating a truck in the unloading of a steamship moored to a pier but some feet away, was injured while on the gangway extending from the ship to the dock, because—

"The work of a stevedore, in which the deceased was engaging, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction."

The constitutional admiralty jurisdiction over such transactions is so far exclusive as not only to prohibit the application of State workmen's compensation laws to them but also to restrain congress from extending such State laws to jurisdiction therein. *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 160 (40 Sup. Ct. 438, 11 A. L. R. 1145), in which the court said:

"As the plain result of these recent opinions and the earlier cases upon which they are based, we accept the following doctrine: The Constitution itself adopted

and  established, as part of the laws of the United States, approved rules of the general maritime law and empowered congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction.  Moreover, it took from the States all power, by legislation or judicial decision, to contravene the essential purposes of, or to work material injury to, characteristic features of such law or to interfere with its proper harmony and uniformity in its international and interstate relations.   To preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within control of the Federal government was the fundamental purpose; and to such definite end congress was empowered to legislate within that sphere."  .

It is urged that these rulings have been modified by subsequent decisions, but the court in *Washington* v. *Dawson & Co.*, 264 U. S. 219 (44 Sup. Ct. 302), denied the modification and distinguished the later cases. Therefore, the point from which further inquiry must proceed is that State compensation laws do not apply to injuries occurring on navigable waters during employment of a maritime nature under a maritime contract.

An exception to the doctrine of the *Jensen Case* is noted in *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469 (42 Sup. Ct. 157, 25 A. L. R. 1008), where it was held that the workmen's compensation law of Oregon was applicable to an injury sustained by Rohde while on the ship, building a bulkhead in a partially completed vessel then under construction, the vessel lying at a dock in navigable waters.   The conclusions of the court may be best expressed in its own words:

"The contract for constructing 'The Ahala' was non-maritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time had any direct relation to navigation or commerce. * * * The injury was suffered within a State whose positive enactment pre-

scribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the industrial accident fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. *Union Fish Co.* v. *Erickson,* 248 U. S. 308 (39 Sup. Ct. 112). Under such circumstances regulations of the rights, obligations, and consequent liabilities of the parties, as between themselves, by a local rule, would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.    *    *    *

"The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction, and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled.    *    *    *

"In *Western Fuel Co.* v. *Garcia,* 257 U. S. 233 (42 Sup. Ct. 89) we recently pointed out that, as to certain local matters regulation of which would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by State statutes. The present case is controlled by that principle."

The court distinguished the *Jensen* and other like cases:

"In each of them the employment or contract was maritime in nature and the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity. Here the parties contracted with reference to the State statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential."

And held that while—

"the general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction when lying on navigable waters within a State,"

.yet—

"in the circumstances stated, the exclusive features of the Oregon workmen's compensation act would apply and abrogate the right to recover damages in an admiralty court which otherwise would exist."

In *State Industrial Commission of New York* v. *Nordenholt Corp.*, 259 U. S. 263 (42 Sup. Ct. 473, 25 A. L. R. 1013), the workman, Insana, was injured while working on the dock, engaged as a longshoreman unloading a vessel. The court, holding the State compensation act applicable, said:

"The stevedore's contract of employment did not contemplate any dominant Federal rule concerning the master's liability for personal injuries received on land. In *Jensen's Case*, rights and liabilities were definitely fixed by maritime rules, whose uniformity was essential. With these the local law came into conflict. Here no such antagonism exists. There is no pertinent Federal statute; and application of the local law will not work material prejudice to any characteristic feature of the general maritime law."

In its opinion, the court thus referred to the *Grant Smith-Porter Case:*

"The Oregon workmen's compensation law prescribed an exclusive remedy, and the question presented was whether to give it effect would work material prejudice to the general maritime law. The accident occurred on navigable waters and the cause was of a kind ordinarily within the admiralty jurisdiction. Neither the general employment contracted for nor the workmen's activities at the time had any direct relation to navigation or commerce—it was essentially a local matter."

In *Washington* v. *Dawson & Co., supra,* the court disposed of the *Nordenholt Case* by the observation that the injuries were received "on the dock—a matter never within the admiralty jurisdiction."

In *Millers' Indemnity Underwriters* v. *Braud,* 270

U. S. 59 (46 Sup. Ct. 194), the doctrine of the *Grant Smith-Porter Case* was applied to a maritime employment and the exception was clarified.   The employee was a diver, engaged in working off a barge anchored in navigable waters, removing the timbers of an abandoned set of ways, once used for launching ships. While the facts showed a maritime tort, both from locality and character of the work, the court held the Texas compensation law applicable because—

"the matter is of mere local concern and its regulation by the State will work no material prejudice to any characteristic feature of the general maritime law."

The court, however, confined the operation of the State law to the exception declared, and maintained the integrity of its doctrine by citing distinguishing cases:

"We had occasion to consider matters which were not of mere local concern because of their special relation to commerce and navigation, and held them beyond the regulatory power of the State in *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479 (43 Sup. Ct. 418) ; *Washington* v. *Dawson & Co.,* 264 U. S. 219 (44 Sup. Ct. 302) ; *Gonsalves* v. *Morse Dry Dock & Repair Co.,* 266 U. S. 171 (45 Sup. Ct. 39) ; *Robins Dry Dock & Repair Co.* v. *Dahl,* 266 U. S. 449, 457 (45 Sup. Ct. 157)."

In the *Kierejewski Case,* the employee, a master boiler maker, was injured while working from a float alongside a scow, making repairs on the scow.   The *Dawson Case* included the instances of stevedores working only on board ship, and workmen engaged at maritime work under maritime contract upon a vessel moored at a dock.   Gonsalves was working on board a steamer in a floating dock, aiding in the repair of the shell plates.   Dahl was doing repair work on a steamer.   In the latter case, the court said:

"The alleged tort was maritime, suffered by one doing repair work on board a completed vessel.   The

matter was not of mere local concern, as in *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469, 476 (42 Sup. Ct. 157, 25 A. L. R. 1008), but had direct relation to navigation and commerce, as in *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479 (43 Sup. Ct. 418). The rights and liabilities of the parties arose out of and depended upon the general maritime law, and could not be enlarged or impaired by the State statute."

The latest rulings of the court are that the Louisiana compensation law did not apply to an injury sustained by a helper to a boiler maker sent on board a steamer on the Mississippi river to help lengthen a smoke stack (*Messel* v. *Foundation Co.,* 274 U. S. 427 [47 Sup. Ct. 695]), nor to the death of a longshoreman while unloading a vessel. *Smith & Son* v. *Taylor,* U. S. Sup. Ct. Adv. Ops. 1927-28, p. 273 (48 Sup. Ct. 228).

From the authorities we deduce:

1. If an injury occurs on land, the maritime law does not operate.

2. If it occurs on navigable waters, the jurisdiction of admiralty is *prima facie* exclusive.

3. If an injury occurs on navigable waters and in the performance of a maritime contract, it is certainly within the exclusive jurisdiction of admiralty unless—

(*a*) the contract is of merely local concern, and
(*b*) its performance has no direct effect upon navigation or commerce, and
(*c*) the application of the State law "would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations."

4. State workmen's compensation laws, contractual in character, are applicable to maritime service on navigable waters when, and only when, the service is within exceptions (*a*), (*b*) and (*c*) above.

5. If, however, the injury occurs on navigable waters, but in the performance of a nonmaritime contract, it is, at least *prima facie,* local and within the operation of State laws.    If there are any exceptions to this rule, they are yet to be developed.

The construction of a new vessel is a nonmaritime contract.    The repair of a once completed ship is a maritime contract.    *Edwards* v. *Elliott,* 88 U. S. 532; *Thames Towboat Co.* v. *The "Francis McDonald,"* 254 U. S. 242 (41 Sup. Ct. 65) ; *Globe Iron Works Co.* v. *Steamer,* 100 Mich. 583 (43 Am. St. Rep. 464) ; *Danielsen* v. *Morse Dry Dock & Repair Co.,* 235 N. Y. 439 (139 N. E. 567).

The work being done on the Roumania was repairing, not constructing.    *New Bedford Dry Dock Co.* v. *Purdy,* 258 U. S. 96 (42 Sup. Ct. 243, 66 L. Ed. 482, and note).

It is, of course, the purpose of repairs to enable the ship to again ply the waters and carry passengers or freight.    The authorities cited are uniform in holding that the repair of a vessel has a direct relation to commerce and navigation and is not a local matter. The same rule is not applied to ships under construction, although their ultimate purpose is water carriage, because, theoretically, a ship is constructed on land, and, until completion, it does not become an instrumentality of commerce.    A completed ship, once in commission, has taken and retains a definite status as a means of navigation and commerce.    Nor have the courts intimated a distinction between the repair of a vessel, withdrawn from service for extensive overhauling, and of one under charter, *en route,* in actual commission or being fitted for a specific voyage.    And counsel have not suggested in what manner the distinction may be made or limited without imperiling the harmony and uniformity of the maritime law in its international or interstate relations.    In the absence

of an act of congress to the contrary, the plain pronouncements that the repair of a completed ship is a maritime contract and has a direct relation to commerce and navigation must govern.

The award will be vacated.

North, Fellows, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.