[S. F. No. 13830. In Bank.—September 29, 1930.]

BESSIE K. TEAHAN et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

George C. Faulkner, Marcus L. Samuels and Hudson Ford for Petitioners.

Edward O. Allen, Markell C. Baer, Port Attorney, City of Oakland, and Hilton J. Melby, Assistant Port Attorney, City of Oakland, for Respondents.

WASTE, C. J.—Joseph D. Teahan, a civil service employee of the city of Oakland, a municipal corporation, sustained injuries to his head and spine when he fell on the steamer ''Washington,'' at the time tied up at one of the city's wharves and afloat on navigable waters of the United States. Upon his death several months later his dependents filed an application with the respondent commission for adjustment of claim. The city of Oakland, which is self-insured, opposed the application, contending that the injury was of a maritime character and that, therefore, the Workmen's Compensation Act (Stats. 1917, p. 831) was without application by reason of the paramount force of the law maritime. Evidence addressed to this jurisdictional question was taken by the commission, which found that ''said injuries were sustained by the employee while upon navigable waters of the United States, and the work being done by deceased at said time was maritime in character.'' ■ A dismissal of the application for adjustment of claim followed, and the cause comes to this court on a writ of review to determine whether or not the respondent commission has jurisdiction in the premises. In denying an award of compensation the commission apparently assumed the position, vigorously urged by the employer, that since the unloading of vessels has been held to be a maritime occupation, the delivery of the manifest papers, which is a prerequisite to such unloading, partakes of the nature of the unloading and is also essentially maritime in character.

The evidence discloses that, as an assistant wharfinger at the Livingston Street dock, Teahan was charged with the care and custody of goods and property placed thereon. While he was required to check all property arriving on or leaving the wharf, he took no part in the actual loading or unloading of vessels and exercised no control over persons engaged for that purpose. His duties were performed almost entirely on land, though occasionally he would board a vessel tied to the dock in order to secure the manifest papers and thus facilitate the work of unloading. The testi-

mony of the captain of the steamer "Washington" shows that it is the usual and customary thing for the captain of a vessel to take the papers ashore. His testimony also discloses that "most of the time" he took the manifest papers ashore when he docked at the Livingston Street wharf. However, on February 7, 1929, Teahan, varying this procedure, boarded the steamer "Washington," which had just docked, to get the manifest papers. After securing them and while returning to the dock, but while still on board the vessel, he fell down a ladder or stairway and sustained the injuries above described.

A wharfinger has been described as the "owner or occupier of a wharf." (Ency. Brit.) In *Chapman* v. *State,* 104 Cal. 690, 694 [43 Am. St. Rep. 158, 38 Pac. 457, 458], he is referred to as "one who for hire receives merchandise on his wharf either for the purpose of forwarding or for delivery to the consignee on such wharf. . . ." ▆ Docks and wharves are not a part of the navigable waters but are extensions of the land. (*State Industrial Com.* v. *Nordenholt Corp.,* 259 U. S. 263, 272, 273 [25 A. L. R. 1013, 66 L. Ed. 933, 42 Sup. Ct. Rep. 473, see, also, Rose's U. S. Notes Supp.] ; *London Guarantee & A. Co.* v. *Industrial Acc. Com.,* 279 U. S. 109, 122 [73 L. Ed. 632, 49 Sup. Ct. Rep. 296] ; *Smith* v. *Taylor,* 276 U. S. 179, 181 [72 L. Ed. 520, 48 Sup. Ct. Rep. 228].) Teahan was a land employee. His contract of employment was nonmaritime and the services required of him were not maritime in character but, in the main, had to do solely with the custody and protection of property placed on the dock. Here we have the deceased working for an employer whose business is on land and whose contract in its essential details was to be performed on land, temporarily boarding a vessel tied to a dock in order to procure its manifest papers, which, under the evidence, ordinarily would have been delivered to him on the dock by the captain of the vessel. ▆ The fact that such employee suffered injury while thus temporarily on navigable waters is not alone determinative of the exclusiveness of maritime jurisdiction to adjudge the rights and obligations growing out of such a situation (*Grant Smith-Porter Co.* v. *Rohde,* 257 U. S. 469, 475, 476 [25 A. L. R. 1008, 66 L. Ed. 321, 42 Sup. Ct. Rep. 157, see, also, Rose's U. S. Notes Supp.]), nor is the fact that, at the moment of

his injury, the employee was engaged in performing services which might be classed as maritime in character. (*Sultan Ry. etc. Co.* v. *Department of Labor,* 277 U. S. 135 [72 L. Ed. 820, 48 Sup. Ct. Rep. 505, 506].) The later decisions of the United States Supreme Court lay down additional tests, namely, (1) Had the injured person's activities at the time of the accident "direct relation to navigation or commerce"? (2) Under the circumstances of the particular case, would the regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule, necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with its proper harmony or uniformity? (*Grant Smith-Porter Co.* v. *Rohde, supra; Miller's Indemnity Underwriters* v. *Braud,* 270 U. S. 59, 64 [70 L. Ed. 470, 46 Sup. Ct. Rep. 194]; *Alaska Packers' Assn.* v. *Industrial Acc. Com.,* 276 U. S. 467, 469 [72 L. Ed. 656, 48 Sup. Ct. Rep. 346].) State statutes providing compensation for injured employees may be treated as amending or modifying the maritime law in cases where they concern purely local matters and occasion no interference with the uniformity of such law in its international and interstate relations. (*Oakland* v. *Industrial Acc. Com.,* 198 Cal. 273, 275, 276 [244 Pac. 353, 355].) If a reasonable view of the facts involved in any particular case warrants a negative answer to the above questions, admiralty will yield to the local law, even though such law be a workmen's compensation statute. It is not necessary, therefore, to determine whether admiralty could have jurisdiction, but only whether or not our state Workmen's Compensation Act can apply notwithstanding general admiralty jurisdiction; or, otherwise stated, whether the deceased, when injured, was engaged in any work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law. It is difficult to lay down any general rule by which to judge whether a particular set of facts constitutes a "purely local" situation, within the meaning of the federal authorities, to which a local act may apply, or a situation governed exclusively by the maritime law.

After reviewing the decisions of the United States Supreme Court, it is concluded in *La Casse* v. *Great Lakes Eng. Works,* 242 Mich. 454 [219 N. W. 730, 733], that "(1) If an injury occurs on land, the maritime law does not operate. (2) If it occurs on navigable waters, the jurisdiction of admiralty is *prima facie* exclusive. (3) If an injury occurs on navigable waters and in the performance of a *maritime* contract, it is certainly within the exclusive jurisdiction of admiralty unless (a) the contract is of merely local concern; and (b) its performance has no direct effect upon navigation or commerce; and (c) the application of the state law 'would not ·necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.' (4) State workmen's compensation laws, contractual in character, are applicable to *maritime* service on navigable waters, when, and only when, the service is within exceptions (a), (b) and (c) above. (5) If, however, the injury occurs on navigable waters, but in the performance of a *nonmaritime* contract, it is, at least *prima facie,* local and within the operation of state laws. If there are any exceptions to this rule, they are yet to be developed."

Teahan was essentially a land employee engaged under a nonmaritime contract. The parties thereto unquestionably contracted with reference to the state statute, and the application of the local law to their rights and liabilities "cannot materially affect any rules of the sea whose uniformity is essential." (*Grant Smith-Porter Co.* v. *Rohde, supra,* 257 U. S. 477.) If Teahan had been injured on the dock little doubt could ·exist as to the applicability of the compensation act. (*State Industrial Com.* v. *Nordenholt, supra.*) Since his contract of general employment is not shown to have been other than a land contract, the mere incident that in its performance he occasionally went on navigable waters is not sufficient, in our opinion, to cause that employment, and the rights and liabilities which pertain to it, to be so deprived of their essentially local character that admiralty would take jurisdiction to the exclusion of a helpful state law. While the kind of work Teahan was doing at the time of his injury bore a certain relation to navigation, in that delivery of manifest papers is a prerequisite to the unload-

ing of vessels, we are not prepared to say that it bore such a "direct" relation thereto as to preclude the application of the provisions of the Workmen's Compensation Act.

In the cases cited by respondents where admiralty has taken jurisdiction to the exclusion of the local law, the person injured was either employed under a maritime contract or was engaged in activities which had a much plainer and more direct relation to navigation than the work of Teahan. (*Northern Coal Co.* v. *Strand,* 278 U. S. 142 [73 L. Ed. 232, 49 Sup. Ct. Rep. 88], *Southern Pac. Co.* v. *Jensen,* 244 U. S. 205 [Ann. Cas. 1917E, 900, L. R. A. 1918C, 451, 61 L. Ed. 1086, 37 Sup. Ct. Rep. 524, see, also, Rose's U. S. Notes Supp.], *Nogueira* v. *New York etc. Ry. Co.,* 281 U. S. 128 [74 L. Ed. 754, 50 Sup. Ct. Rep. 303], *Baizley Iron Works* v. *Span,* 281 U. S. 222 [74 L. Ed. 819, 50 Sup. Ct. Rep. 306], and *Employers' Liability Assur. Corp.* v. *Cook,* 281 U. S. 233 [74 L. Ed. 823, 50 Sup. Ct. Rep. 308].) The concurring opinion of Mr. Justice Stone very clearly explains the majority decision in the Northern Coal Co. case as being based on the conclusion that a stevedore, while working on a ship in navigable waters, is a "seaman" within the meaning of the Jones Act, 41 Stat. 1007 (46 U. S. C. A., sec. 688), and must therefore look to that act for redress, to the exclusion of state legislation.

The three more recent cases above cited fell squarely within the earlier rulings of the Supreme Court and therefore added nothing of a new or novel character to its prior adjudications. For the respondent commission to assume jurisdiction of this proceeding will not, in our opinion do violence to any of these decisions. The deceased in this case was not a seaman in any sense of the word. His boarding of vessels was merely casual and prompted solely by a desire to facilitate the discharge of his duties under a nonmaritime contract. To permit the rights and liabilities of the parties to this proceeding to be determined by the respondent commission under the provisions of the Workmen's Compensation Act will not in any way interfere with the characteristic features of the general maritime rules. This conclusion makes it unnecessary for us to determine petitioners' remaining contention that the city of Oakland is precluded, under the decision in *City of New York* v. *McEntee,* 263 U. S. 688 [68 L. Ed. 507, 44 Sup. Ct. Rep.

229], from urging that the respondent commission is without jurisdiction of this cause.

The order and decision denying the petitioners an award in this case is set aside and the cause is remanded for further proceedings before the commission.

Seawell, J., Langdon, J., Preston, J., Curtis, J., Shenk, J., and Richards, J., concurred.