[Civ. No. 12697.  First Dist., Div One.  Jan. 26, 1945.]

DAVID H. CLARK, Appellant, v. CAHILL BROTHERS (a Copartnership) et al., Respondents.

John J. Taheny for Appellant.

Burbank & Laumeister and John P. McFarland for Respondents.

KNIGHT, J.—Plaintiff brought this action under the admiralty jurisdiction of the superior court to recover damages for injuries alleged to have been sustained when he slipped and fell on a landing or float, owned and maintained by defendants, after he had disembarked from a tug operated by defendants which had transported him from Vallejo to Mare Island, where he was employed by defendants as a pile driver in the construction of a wharf or pier.  The trial court granted defendants' motion for nonsuit on the ground that the Industrial Accident Commission had sole and exclusive jurisdiction of the case; and from the judgment so entered plaintiff has appealed.  The sole question raised by the appeal is whether

the jurisdiction of the case is in admiralty, and therefore triable in the superior court.

The facts pertinent to the question thus raised on the appeal, as shown by the plaintiff's evidence, may be stated as follows: The accident happened January 11, 1942, a few minutes before 7 o'clock in the morning. Plaintiff and some forty other workers left Vallejo in a tug which had been chartered by defendants for the purpose of taking employees to their work on a concrete pier being constructed by defendants on Mare Island. The distance between the two points was about a mile and a half, across the Mare Island Straits. Those being transported on the tug were all employees of defendants; no fare was charged for the ride, and no persons other than employees were allowed on the tug. When the tug pulled up at the wharf where the men were to work, it berthed at a float or landing which was fastened to the wharf by cables. The men then left the tug, stepped down about two feet to the float or landing, went up a ramp to the wharf and to a tool room maintained by defendants, where they procured their tools and changed into their working clothes, then reported for work on the pier at 7 a. m.

The float or landing where the men stepped upon disembarking from the tug was about 50 feet long and 15 or 16 feet wide. It was placed alongside the concrete pier, between it and the place where the tug stopped, and was attached at one end by a cable fastened to the floor of the float and then passed around the concrete piling and back to the float; at the other end a girt (a 4 x 16 timber) had been extended out from the concrete piling and bolted to some temporary wooden piling driven in about 12 or 14 feet from the dock proper, and another cable was fastened to the deck of the float and passed around the temporary wooden piling and back to the float; that is, the float was fastened at one end and on the side nearest the pier to the concrete piling, and on the other end and the offshore side to the temporary wooden piling, by cables attached to the float, so that the float rose and fell with the tide. The float itself was constructed of used piles, laid parallel to each other. They were held together by stringers laid across the top, and the floor, made of planking with the rough side up, was laid on top of the stringers. The piles were waterlogged, so that the end of the float where the thick ends of the piles were, floated low; consequently the northerly third of

the float was under water a considerable part of the time, and was covered with slime from the overwash of the water.

At the time the accident happened, it was dark and foggy, and there were no lights on the landing. The tug pulled up so that the opening in the rail thereof, through which the men disembarked, was opposite the slimy part of the float. On previous occasions the tug had stopped farther south, so that the opening in the rail would not be opposite the slimy part of the float. Plaintiff and the other men stepped from the tug to the float, and plaintiff took 4 or 5 steps and traversed about half the distance to the ramp when he slipped and fell, striking his back and the back of his head, sustaining injuries thereto. About two and a half hours after the accident to plaintiff, a higher floor was built on the float, about 8 inches above the original floor, and the cable which had been used to fasten the float on the upper end—the offshore side—was eliminated and the float was fastened at that end by two protruding parallel boards and a cross-piece. Thereafter the surface of the float remained entirely above the water.

Appellant contends in substance that the accident happened on navigable waters, and that therefore the jurisdiction of the case was in admiralty, and the State Workmen's Compensation Act is not applicable. In this regard he argues that because the injury occurred on an instrumentality used solely as a means of passage from the vessel to the land, which rested on navigable waters and rose and fell with the tide, the same general rules apply which would be applied if his injury had occurred while on the vessel.

Admittedly, in California, both the admiralty jurisdiction and that of the Workmen's Compensation Act are exclusive; that is, if the employee's remedy is under the Workmen's Compensation Act, he is barred from proceeding in admiralty. But the question of defining the boundary between admiralty and state jurisdictions in compensation cases has arisen in a great many adjudicated cases, in the United States Supreme Court and in lower federal and state courts, and has been found extremely difficult to define. Mr. Justice Holmes, in *The Blackheath* (195 U.S. 361 [25 S.Ct. 46, 49 L.Ed. 236]) said that "The precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history." This uncertainty is pointed out in the recent case of *Davis* v. *Department of Labor,* 317 U.S. 249 [63 S.Ct. 225, 87 L.Ed. 246], wherein the court, in reviewing the history of the ques-

tion, said: ''A line of opinions of this Court beginning with *Southern P. Co.* v. *Jensen,* 244 U.S. 205, 216, 61 L.Ed. 1086, 1098, 37 S.Ct. 524, L.R.A. 1918C 451, Ann.Cas. 1917E 900, 14 NCCA 597, held that under some circumstances states could, but under others could not, consistent with Article 3, section 2 of the Federal Constitution, apply their compensation laws to maritime employees. State legislation was declared to be invalid only when it 'works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.' When a state could and when it could not grant protection under a compensation act was left as a perplexing problem, for it was held 'difficult, if not impossible,' to define this boundary with exactness.'' The court then related the attempts made by Congress to clarify the situation and eliminate the confusion, with the result that as it now stands, ''Harbor workers and longshoremen employed 'in whole or in part upon the navigable waters' are clearly protected by this Federal Act; but, employees such as decedent here occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation. This court has been unable to give any guiding, definite rule to determine the extent of state power in advance of litigation, and has held that the margins of state authority must 'be determined in view of the surrounding circumstances as cases arise.' (*John Baizley Iron Works* v. *Span,* 281 U.S. 222, 230, 74 L.Ed. 819, 821, 50 S.Ct. 306.) The determination of particular cases, of which there have been a great many, has become extremely difficult. It is fair to say that a number of cases can be cited both in behalf of and in opposition to recovery here. The very closeness of the cases cited above and others raising related points of interpretation has caused much serious confusion.''

However, without attempting to reconcile the many cases cited and argued here by both appellant and respondents in support of their respective contentions, or to resolve what appear to be conflicting holdings in the many cases, and considering the present case strictly on its own facts, we are of the opinion that the jurisdiction of the case lay properly within the Workmen's Compensation Act of the State of California. Regardless of the numerous tests suggested in the various cases cited, the real and fundamental test and the underlying and ultimate deciding factor in all of the cases

is whether the application of the local Workmen's Compensation Act to them will interfere with the characteristic features or disturb the uniform application of the general maritime law. As said in Campbell on Workmen's Compensation, volume 1, page 523: "On fundamental principles, it was no part of the purpose of the framers of the Constitution of the United States, in giving to the Federal Government jurisdiction over interstate and foreign commerce by land and sea, to take from the States the regulation of personal injuries within their borders in matters which do not lay burdens upon or destroy the uniformity of the effect of Acts of Congress governing interstate and maritime commerce. Jurisdiction is still reserved to the States by the Tenth Amendment to the Federal Constitution in all matters of local significance. The major purpose of the constitutional provision is to permit the securing of uniformity in matters of interstate and international commerce only."

The leading case enunciating the doctrine that where the matter is only of local concern, to permit the rights and liabilities of the parties to be determined by the local law would not interfere with the characteristic features of the general maritime rules, is *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U.S. 469 [42 S.Ct. 157, 66 L.Ed. 321, 322]. In that case a workman was employed as a carpenter on an incompleted vessel lying in navigable waters at a dock forming a part of the shipbuilding plant of the employer, and the injury occurred during the employment. It was held that the contract for constructing the vessel was nonmaritime, and that neither the workman's general employment, nor his activities at the time, had any direct relation to navigation or commerce, and that "Under such circumstances regulation of the rights, obligations, and consequent liabilities of the parties, as between themselves, by a local rule, would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations. (*Southern P. Co.* v. *Jensen,* 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086]; *Western Fuel Co.* v. *Garcia,* 257 U.S. 233 [42 S.Ct. 89, 66 L.Ed. 210].) . . . In *Western Fuel Co.* v. *Garcia* we recently pointed out that, as to certain local matters, regulation of which would work no material prejudice to the general maritime law, the rules of the latter might be modi-

fied or supplemented by state statutes. The present case is controlled by that principle." (See, also, *State Industrial Com.* v. *Nordenholt Corp.*, 259 U.S. 263 [42 S.Ct. 473, 66 L.Ed. 933]; 25 A.L.R. note p. 1029.)

In another leading case, *Millers' Indemnity Underwriters* v. *Braud,* 270 U.S. 59 [46 S.Ct. 194, 70 L.Ed. 470], it was held: "In the cause now under consideration the record discloses facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state Compensation Act; but the matter is of mere local concern and its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law. The act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist." (See 56 A.L.R. p. 356.) Other cases which may be cited to the same effect are *Western Fuel Co.* v. *Garcia,* 257 U.S. 233 [42 S.Ct. 89, 66 L.Ed. 210], referred to in the Grant Smith-Porter case, and the California cases, *Oakland* v. *Industrial Acc. Com.,* 198 Cal. 273 [244 P. 353], and *Alaska Packers' Assn.* v. *Industrial Acc. Com.,* 200 Cal. 579 [253 P. 926], affirmed 276 U.S. 467 [48 S.Ct. 346, 72 L.Ed. 656].

The question was also presented to our Supreme Court in the case of *Teahan* v. *Industrial Acc. Com.,* 210 Cal. 342 [292 P. 120]. There an assistant wharfinger went on board a vessel plying navigable waters to get manifest papers for the disposition of cargo being discharged, and while still on board the vessel, but returning to the dock he fell down a ladder or stairway and was injured. The court held that the Industrial Accident Commission had exclusive jurisdiction of the case upon the ground that it was one of predominantly local interest, without any direct or substantial relation to commerce. In so holding the court said: "The fact that such employee suffered injury while thus temporarily on navigable waters is not alone determinative of the exclusiveness of maritime jurisdiction to adjudge the rights and obligations growing out of such a situation (*Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U.S. 469, 475, 476 [42 S.Ct. 157, 66 L.Ed. 321]), nor is the fact that, at the moment of his injury, the employee was engaged in performing services which might be classed as maritime in character. (*Sultan Ry. & T. Co.* v. *Department of Labor,* 277 U.S. 135 [48 S.Ct. 505, 72 L.Ed. 820].)

The later decisions of the United States Supreme Court lay down additional tests, namely, (1) Had the injured person's activities at the time of the accident 'direct relation to navigation or commerce'? (2) Under the circumstances of the particular case, would the regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule, necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with its proper harmony or uniformity? (*Grant Smith-Porter Co.* v. *Rohde, supra; Millers' Indemnity Underwriters* v. *Braud,* 270 U.S. 59, 64 [46 S.Ct. 194, 70 L.Ed. 470]; *Alaska Packers' Assn.* v. *Industrial Acc. Com.,* 276 U.S. 467, 469 [48 S.Ct. 346, 72 L.Ed. 656].) State statutes providing compensation for injured employees may be treated as amending or modifying the maritime law in cases where they concern purely local matters and occasion no interference with the uniformity of such law in its international and interstate relations. (*Oakland* v. *Industrial Acc. Com.* 198 Cal. 273, 275, 276 [244 P. 353].) If a reasonable view of the facts involved in any particular case warrants a negative answer to the above questions, admiralty will yield to the local law, even though such law be a workmen's compensation statute. It is not necessary, therefore, to determine whether admiralty could have jurisdiction, but only whether or not our state Workmen's Compensation Act can apply notwithstanding general admiralty jurisdiction; or, otherwise stated, whether the deceased, when injured, was engaged in any work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law.''

The present case, in our opinion, comes clearly within the ''mere local concern'' rule, and therefore the state Workmen's Compensation Act is applicable. Even though the injury may have occurred on navigable waters, navigation as such had come to an end. The tug was not then being operated in maritime commerce. The accident happened after the employee had alighted from the tug and was walking along a landing or float attached to a wharf, and the injury was in no way connected with the actual navigation or operation of the tug on navigable waters. Nor can it be said that the maintenance and construction of the float was a matter vital to navigation and commerce, the regulation of which by the

state would be of international or interstate importance, or would "interfere with the proper harmony and uniformity of" maritime law (*Southern P. Co.* v. *Jensen,* 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086]) or "materially affect any rules of the sea whose uniformity is essential" (*Grant Smith-Porter Ship Co.* v. *Rohde, supra,* as quoted in *Teahan* v. *Industrial Acc. Com., supra.*)

Therefore, whether or not the general maritime rules relied on by appellant would have been applicable had the injury actually occurred on the vessel is a question we are not called upon to decide here, because such was not the situation in the present case. In view of the many admonitions that each case must be decided on its own particular facts, and under the rules laid down by the cases above cited and quoted from, it is our opinion that under the particular circumstances of the present case the application of the state law and the regulation of the rights and liabilities of the parties by a local rule will not work material prejudice to any characteristic feature of the general maritime law, or interfere with its proper harmony or uniformity; and that therefore "admiralty will yield to the local law" (*Teahan* v. *Industrial Acc. Com., supra*) and the exclusive features of the Workmen's Compensation Act abrogate the right to resort to the admiralty court which otherwise might exist (*Millers' Indemnity Underwriters* v. *Braud, supra.*)

In many cases language is used indicating that because the injured employee's work or his contract of employment was nonmaritime or not directly connected with navigation and commerce, the rules of admiralty were not applicable. (See *Carlin Construction Co.* v. *Heaney,* 299 U.S. 41 [57 S.Ct. 75, 81 L.Ed. 27]; *Grant Smith-Porter Ship Co.* v. *Rohde, supra; Los Angeles Shipbuilding & D. Co.* v. *Industrial Acc. Com.,* 57 Cal.App. 352 [207 P. 416]; *Alaska Packers' Assn.* v. *Industrial Acc. Com., supra; United Dredging Co.* v. *Industrial Acc. Com.,* 92 Cal.App. 110 [267 P. 763]; *Woodworth* v. *Industrial Acc. Com.,* 127 Cal.App. 625 [16 P.2d 302].) But in apparent conflict with this holding, that where the work itself is nonmaritime the state law is applicable, is the case of *Spencer Kellogg & Sons* v. *Hicks,* 285 U.S. 502 [52 S.Ct. 450, 76 L.Ed. 903], strongly relied on by appellant. In that case, employees (and others) were being transported to work in New Jersey on a vessel owned and operated by the employer, and the vessel sank when it struck ice, with a re-

sulting loss of over thirty-five lives. The United States Supreme Court held that the accident was due to the master's negligence—that it was a maritime tort—and that therefore the New Jersey Workmen's Compensation Act was inapplicable and the complainants were entitled to relief under the maritime law. However, an examination of the cases cited first above in this paragraph, with the possible exception of the Carlin case, shows that the underlying principle upon which they were all decided was that the work, not being directly connected with navigation and commerce, was a matter of purely local concern, and the application of the state compensation acts would not necessarily work material prejudice to any characteristic feature of the general maritime law or interfere with its proper harmony or uniformity. As said in *Alaska Packers' Assn.* v. *Industrial Acc. Com.,* (*supra,* 276 U.S. 467): ''When injured certainly he [the injured employee] was not engaged in any work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law. The work was really local in character. The doctrine announced in *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U.S. 469 [42 S.Ct. 157, 66 L.Ed. 321], and *Millers' Indemnity Underwriters* v. *Braud,* 270 U.S. 59 [46 S.Ct. 194, 70 L.Ed. 470], is incompatible with the petitioner's [employer's] claim.'' But in the Kellogg case it is obvious that the accident was not one of ''mere local concern'' but had a direct bearing on the regulation of navigation and commerce, which is a matter reserved by the federal Constitution to the exclusive jurisdiction of admiralty courts. And in the Carlin case, *supra,* the Kellogg case is distinguished, but on other grounds.

In view of the conclusion reached on this question, it is not necessary to discuss any of the other contentions made or arguments presented by the briefs of either party, including the question of contributory negligence, since our conclusion that the state Workmen's Compensation Act is applicable to the present case sustains the trial court's action in granting the motion for nonsuit.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 26, 1945.