## THE GERTRUDE.

### G. O. REED, Inc., v. COWARD.

#### No. 5736.

Circuit Court of Appeals, Fifth Circuit.

March 15, 1930.

H. H. Taylor, of Miami, Fla., for appellant.

Warren S. Reese, of Miami, Fla., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

BRYAN, Circuit Judge.

This is an appeal from a decree in admiralty awarding to appellee a lien for $871.75 for work done in raising and repairing the motorboat Gertrude. Appellant, claimant and owner of the boat, contends that the lien was lost by laches, and also, if it was not so lost, that the amount awarded is excessive.

The Gertrude, a small boat about 33 feet long, was sunk in shallow water at its landing in Biscayne Bay during the great hurricane of September, 1926. Its then owner, Henry Sharp, employed appellee, a boatwright, to raise and repair it. It was found necessary to caulk the boat and replace some of its timbers. In October it was damaged somewhat more by another storm. After that appellee removed it, under its own power, to a boatyard, where he did work on it and made repairs to it, which were completed in April of 1927. In July of 1927 Sharp removed the Gertrude from the boatyard without appellee's consent and transferred it to one Geary, who in February of 1928 sold it to appellant. In July of 1928 appellee found the boat in Geary's possession, but it was moved before he could libel it, and he was unable to find it again, though he continued to search for it, until November of 1928, after which he promptly filed this libel. Appellee testified that in raising and repairing the boat he worked a total of 845 hours, 312 hours of which he stated were taken up during and between the two storms covering a period of about 30 days. During this time he charged up 100 hours for taking care of the boat while it was sunk, refastening lines to keep it from drifting away, working it up to the sea wall, and raising it, and he charged for 144 hours for supervision, pumping, bailing, and inside caulking to keep it afloat. He testified that the prevailing wages at the time for that kind of work were $1.125 per hour. He had been paid only $96. The decree allowed for the full time claimed of 845 hours, at the rate of $1.15 per hour, or $971.75, from which $100 was deducted as having been received on account.

Appellee was diligent in his efforts to enforce payment of his claim. His uncontradicted testimony shows that first Sharp and then Geary kept the boat secreted or out of the way for the purpose of preventing its seizure in libel proceedings, and that appellee was unable to find the boat after it came into appellant's possession until just before the libel was filed. Under these circumstances it cannot be held that the trial court was in error in rejecting the defense of laches.

State statutes, enacted long prior to 1910, gave a lien for labor on vessels and water craft and provided that any suit to enforce it must be brought within 12 months from the performance of the work. Compiled General Laws of Florida 1927, §§ 5363, 5368, 5393. Appellant contends that the state statute of limitations is made controlling by section 30, subsec. S, of the Merchant Marine Act, which it is provided "shall not be construed to affect the rules of law existing * * * in regard to * * * laches in the enforcement of liens upon vessels." 41 Stat. 1005, 46 USCA § 974. In support of that contention, appellant cites Nolte v. Hudson Navigation Co. (C. C. A.) 297 F. 758, in which it was held that the New York statute, which provided that a lien on domestic vessels should cease to exist after 12 months, was a rule of law in regard to laches. But it was also held in that case that there were no exceptional circumstances which made it inequitable to apply the New York statute of limitations. It may well be that a lien which exists only by virtue of a state statute is lost or ceases to exist according to the terms of the state statute of limitations; for in such a case the admiralty court merely enforces a lien that has a valid existence under the state law. The Lottawanna, 21 Wall. 558, 22 L. Ed. 654; The J. E. Rumbell, 148 U. S. 1, 13 S. Ct. 498, 37 L. Ed. 345. But we are of opinion that the "rules of law" kept in force by section 30, subsec. S, of the Merchant Marine Act, are the rules recognized in the admiralty law or established by acts of Congress, and that they were not

meant to include state statutes of limitations. Laches and statutes of limitations are not the same thing. Laches is not made up of the time element only, but diligence or the lack of it is always an important element. In statutes of limitations, the lapse of time is usually the only thing that it is necessary to consider. The Merchant Marine Act, by section 30, subsec. T, immediately following S of that section, supersedes "the provisions of all state statutes conferring liens on vessels, in so far as such statutes purport to create rights of action to be enforced by suits in rem in admiralty." 46 USCA § 975.

It would seem to follow that the act of Congress, which superseded the right of action under the lien statutes of the states, superseded also the limitations placed upon the enforcement of such liens. One of the objects of the Act of June 23, 1910, 36 Stat. 604 (46 USCA § 971 note) which was slightly amended, in a particular not here material, by section 30 subsec. P, of the Merchant Marine Act, 46 USCA § 971, was to substitute a "single federal statute for the state statutes in so far as they confer liens for repairs, supplies and other necessaries." Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct. 1, 4, 65 L. Ed. 97; New Bedford Co. v. Purdy, 258 U. S. 96, 42 S. Ct. 243, 66 L. Ed. 482. We think that section 30, subsec. S of that act, did not abolish, but continued in force, the rules of admiralty law in regard to laches announced in The Key City, 14 Wall. 653, 20 L. Ed. 896, under which courts of admiralty are not governed by any statute of limitations, recognize no arbitrary or fixed period of time within which suits may be brought, but apply the equitable doctrine of laches to the peculiar circumstances of each case.

The decree makes too liberal an allowance for the time spent by appellee in working on the boat. There is no element of salvage in the case, because appellee was under contract to be paid whether the boat was raised or not. An allowance was made to appellee for practically 10 hours a day during the month between the storms. It is nowhere shown that the whole of appellee's time was taken up with the boat. The charge for taking care of the boat, and for supervising its care, would appear without explanation to be a double charge. We think that at least the 845 hours for which an allowance was made should be reduced to 700 hours. At the rate of wages testified to, the total amount would be $787.50 from which should be deducted the $96 paid on account, leaving a balance due of $691.50, with interest from the date of the completion of the work.

It is ordered that a decree be entered by the District Court in favor of appellee for $691.50, together with interest thereon at the rate of 8 per cent. per annum from May 1, 1927.

The decree as so modified is affirmed.