## THE MENDOTTA II.

District Court, E. D. New York.
Dec. 10, 1935.

William A. Marden, of New York City, for libelant.

John T. Little, of New York City, for claimant.

INCH, District Judge.

Libelant, a corporation, conducted a shipyard at City Island, state of New York. By its libel, filed September 5, 1934, it seeks to enforce an alleged lien against the yacht Mendotta II. The suit is in rem. It is based upon the following facts. The Mendotta II is a yacht of the houseboat type about 70 feet long. According to the testimony, she was purchased by a Mr. Cavagnaro in October, 1932, and is now owned by his wife. The boat was at that time at above shipyard and a Mr. Maritato, treasurer of libelant, acted as the broker. After the purchase, Cavagnaro had the boat taken out of the water by means of libelant's marine railway and stored at libelant's yard for the winter at an agreed price of $2.50 a foot.

In May, 1933, she was returned to the water and according to Maritato, the sole witness for libelant, he "did not see the boat again and I did not learn of her whereabouts, until August 1934 when she was attached at Northport, Long Island," a place comparatively near City Island.

During the time that she was in winter storage Maritato says libelant also duly performed certain repairs, etc., in accordance with an agreement with Cavagnaro.

This libel is supposed to enforce the lien for said storage and repairs, etc.

More than twelve months have expired since the completion of all the work sued for.

Apparently Maritato and Cavagnaro had joint business interests, in the Belden Point Shipyard at City Island. This relationship continued up to January, 1934, when Maritato says he became sick and quit. It also appears that this shipyard concern did a later job on this boat in October, 1933, and a receipt by Maritato for repairs performed in October and November, 1933, was signed by him. It also appears from Ericson, the captain of the yacht, that she first left libelant's shipyard at City Island in May, 1933, and went to this Belden Point place in City Island remaining six weeks. She then went to Northport and remained there until September, 1933. She then returned to Belden Point and remained there about a month. She then went to Poughkeepsie and then back to Belden Point, for winter storage, and remained there until May, 1934, when she went to Port Washington and then to Northport.

In spite of the fact that Maritato testifies that he did not know where the boat was after May, 1933, and had not thereafter seen her, owing to his illness, I am unable to credit his testimony in this regard. It seems to me plain that the contrary is the fact. He must have been well aware during most of this time of the whereabouts of this vessel for the purpose of libeling her if he so desired. In spite

of his illness allegedly preventing him, nevertheless, he appears to have gone to Poughkeepsie to prosecute his claim, and plainly shows his intention to collect any money owing to him, personally, from Cavagnaro.

The evidence shows several meetings during this time between these parties. Apparently a disagreement arose between these joint adventurers in the shipyard business, coupled with a claim by Cavagnaro for chains purchased by Cavagnaro and furnished to Maritato for use in the shipyard and for which the latter was to account in case of sale.

Claimant defends against this suit by stating that "winter storage" of a vessel cannot be the subject of a maritime lien, and that, in any event, the enforcement of any such lien is barred by a statute of the state of New York, which states in substance that such a lien shall cease at the expiration of twelve months after the debt is contracted. Section 83, Lien Law of the State of New York, McKinney's Consolidated Laws of New York Anno., c. 33 (Book 32).

In my opinion this lien, if any was given, was not controlled by the state statute mentioned, but is given by section 20, Subsection P, of the Merchant Marine Act of June 5, 1920 (46 U.S.C.A. § 971); The Owyhee (C.C.A.) 66 F.(2d) 399; The Gertrude (C.C.A.) 38 F.(2d) 946.

There is authority for holding that "storage" under the circumstances here, is included under the word "necessaries." The Artemis (D.C.) 53 F.(2d) 672.

However, reasonable diligence is required from a libelant who desires to proceed "in rem." This court can consider, on this question of laches, the statutory limitation, as well as all other circumstances arising from the relationship of the parties to the controversy.

Where the facts justify, as they do here, the reasonable inference that libelant, instead of proceeding with reasonable diligence to arrest the vessel, preferred to collect in personam, such delay, occasioned by such choice, cannot be overlooked if months after the year has elapsed libelant now seeks to proceed in rem.

Under the circumstances here, I find laches on the part of the libelant sufficient to defeat this action in rem. Accordingly, the libel is dismissed.

If this opinion is not considered a sufficient compliance with the rule 46½ of the Rules in Admiralty (28 U.S.C.A. following section 723), findings of fact and conclusions of law in accordance herewith may be submitted.