[Civ. No. 13927.   First Dist., Div. Two.   Jan. 11, 1949.]

R. F. BASKIN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Stark & Champlin for Petitioner.

T. Groezinger, John A. Rowe and R. P. Wisecarver for Respondents.

GOODELL, J.—This proceeding was brought to review an order of the commission which dismissed petitioner's application for compensation on the ground that the case is exclusively within federal jurisdiction.

Petitioner was a materialman employed from March, 1943, until December 10, 1945, by respondent Kaiser Company, Inc., at its Shipyard No. 3.   His work during that time was entirely on shore (or on ships under construction) with the exception of two or three tours of short duration when he was sent to work aboard ships being repaired.

On December 10, 1945, the S. S. "William Moultrie" was undergoing repairs. She was one of three vessels tied up side by side at the shipyard wharf in San Francisco Bay and was the farthest out. A crane on the wharf moved materials from place to place on these ships. One of the holds on the "Moultrie" was being repaired. The crane's boom could not reach the planks already on board, to move them from one hold to another, and it became necessary to send men aboard to do so. Despite standing instructions that Baskin should not be sent aboard ships under repair, he was ordered onto the "Moultrie" to help, and while there fell down a hold and was seriously and permanently injured.

In 1927, Congress enacted the Longshoremen's and Harbor Workers' Compensation Act (44 Stats. 1424; 33 U.S.C.A. §§ 901-950). Section 902, subdivision 4, shows that the act covers persons "employed in maritime employment, in whole or in part, upon the navigable waters of the United States. . . ." Section 903(a) provides that "Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States . . . and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. . . ."

Petitioner contends that this language indicates that "Congress made clear its purpose to permit state compensation protection whenever possible . . ." (*Davis* v. *Department of Labor, etc.*, 317 U.S. 249, 252 [63 S.Ct. 225, 87 L.Ed. 246]), and states the question presented for decision as follows: "Only if the state could not constitutionally provide compensation for petitioner's injuries, may the order of respondent Commission be sustained."

█ It is well settled that ". . . contracts for the building of vessels or ships, or for labor performed, or materials furnished, in their construction, are *not* maritime contracts and *not* cognizable in admiralty, . . ." but that "*After a vessel has been completed and put in commission, contracts . . . to repair her . . . are maritime in their nature. . . .*" (1 Am.Jur. pp. 565-566; *New Bedford Dry Dock Co.* v. *Purdy,* 258 U.S. 96 [42 S.Ct. 243, 66 L.Ed. 482].) (Emphasis added.)

The "Moultrie" was in commission and undergoing repairs hence the work on her was being done under a maritime contract.

In developing their contention that this case is within the state and not the federal act, counsel for petitioner argue that Baskin was not a carpenter; that he did nothing by way of attaching or affixing lumber or other materials to the structure of the vessel, but was a mere helper carrying planks from one hold to another, where a skilled joiner was to make them a part of the ship. The answer to this is that he was just as much engaged in the performance of his employer's maritime contract as was the joiner who did the carpentry, albeit of humbler station.

With respect to the difference in status, noted above, between a ship under construction and a commissioned ship under repair, petitioner points out that he was paid at two different rates, i. e., $1.20 an hour while on "new construction" and $1.34 while on repair work, and that on the day of his injury he was paid at the "new construction" rate. This is urged in aid of petitioner's broader point that his work was nonmaritime, local and predominantly on shore; that his infrequent assignments to ships under repair were of but a quarter-hour to an hour's duration, hence that his work on shipboard when injured was a mere deviation from his regular nonmaritime shore job, bringing the case within the *de minimis* rule.

Substantially the same argument was considered in *Parker* v. *Motor Boat Sales, Inc.*, 314 U.S. 244 [62 S.Ct. 221, 86 L.Ed. 184], where the employee's duties were likewise habitually ashore. There the employee had been cautioned not to board the boats. He did so, however, and drowned. The court said: "This proposition cannot be rested on the ground that Armistead, hired primarily as a janitor and porter, was predominantly a non-maritime employee. For habitual performance of other and different duties on land cannot alter the fact that at the time of the accident he was riding in a boat on a navigable river, and it is in connection with that clearly maritime activity that the award was here made. Cf. *Northern Coal & Dock Co.* v. *Strand*, 278 U.S. 142, 144, 73 L.Ed. 232, 234, 49 S.Ct. 88, 28 N.C.C.A. 18; *Employers' Liability Assur. Corp.* v. *Cook*, 281 U.S. 233, 236, 74 L.Ed. 823, 824, 50 S.Ct. 308. Moreover, sec. 2(4) of the Act, 33 U.S.C.A. sec. 902(4), expressly provides for its application to 'employees [who] are employed . . . in whole or *in part* upon the navigable waters of the United States.' "

In the Strand case, *supra,* the court said: "The fact that Strand worked for the major portion of the time upon land

is unimportant. He was upon the water in pursuit of his maritime duties when the accident occurred." And in the Cook case, *supra*, it is said: "Whether Cook's employment contemplated that he should work regularly in unloading vessels or only when specially directed so to do is not important. The unloading of a ship is not matter of purely local concern as we have often pointed out."

*Ex parte Rosengrant*, 213 Ala. 202 [104 So. 409] (affirmed without opinion in *Rosengrant etc.* v. *Havard*, 273 U.S. 664 [47 S.Ct. 454, 71 L.Ed. 829]), is also cited in support of the argument that Baskin was a land and not a sea employee and that his work was not maritime in character. Havard, a lumberyard employee, was checking lumber aboard a barge when killed. The court held that his work was nonmaritime in character and might just as well have been done ashore. The same reasoning applies to *Teahan* v. *Industrial Accident Commission*, 210 Cal. 342 [292 P. 120] (relied on by petitioner) and distinguishes it from the instant case. There Teahan, a wharfinger, was injured while momentarily on shipboard getting the ship's manifest. He was purely a volunteer, as his duties did not require him to leave the wharf. Neither case is in point. Baskin was clearly engaged in the performance of a maritime contract at the time of injury, which was not the case with either Havard or Teahan. (See discussion of Teahan case in *Clark* v. *Cahill Bros.*, 67 Cal. App.2d 689 at 694, 696 [155 P.2d 125].)

A case such as the present one is *Norton* v. *Gulf Refining Co.*, 94 F.2d 380, certiorari denied 304 U.S. 566 [58 S.Ct. 949, 82 L.Ed. 1532], where a barge on the Ohio River was being loaded with gasoline drawn from tanks on land. The company's gauger aboard the barge called the pump house and asked that McLane, an assistant, then working ashore be sent to the barge with sample bottles so that samples might be taken of the gasoline being loaded. McLane went aboard with a rack of bottles and while conversing with the gauger for not more than about three minutes an explosion occurred on the barge, fatally injuring both men. The district court held that McLane's employment had no relation to navigation and was nonmaritime, relying on *Rosengrant* v. *Havard, supra.* In reversing, the Circuit Court of Appeals held that "the sampling of the gasoline in the barge was necessary before the barge could depart" and distinguished the Rosengrant case, where the lumber company's employee was checking lumber aboard a barge, pointing out that "his checking of the

lumber could as well have been done on shore after the lumber left the vessel. There was no necessity for his going on the barge."

The work which Baskin was sent to do could not have been done ashore for the planks were on the ship and the crane's boom was too short to reach them. In pressing his "on shore duties" argument petitioner goes so far as to say that the ship could have been moved closer shoreward so as to bring her within reach of the boom! And it was apparently as necessary that the work on the hold be done before the ship could sail as was the sampling of the gasoline in the Norton case. McLane had been taken from his shore duties and ordered onto the water; Baskin likewise. In both cases the work on the ship was maritime in character.

*Parker* v. *Motor Boat Sales, Inc., supra,* is likewise similar to this case on its facts. There one Armistead was employed in the sales company's store as a janitor and porter. On the occasion in question an outboard motor had to be tested on a trial run, and after Armistead had helped to install it the employee in charge asked him to go along as a lookout to watch for submerged obstacles in the muddy river. The boat hit one of them, capsized, and he drowned. It was held by the Circuit Court of Appeals (116 F.2d 789), as it is urged here, that Armistead's duties were predominantly on shore, local and nonmaritime, but this holding was reversed, the Supreme Court emphasizing the point that the statute applies to persons "employed . . . in whole or *in part* upon the navigable waters of the United States."

The test found in the Teahan case helps to solve the present problem. At 210 Cal. 346 the court adopts the following from *La Casse* v. *Great Lakes Eng. Works,* 242 Mich. 454 [219 N.W. 730, 733] : ". . . (3) If an injury occurs on navigable waters and in the performance of a *maritime* contract, it is certainly within the exclusive jurisdiction of admiralty unless (a) the contract is of merely local concern; and (b) its performance has no direct effect upon navigation or commerce; and (c) the application of the state law 'would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.' (4) State workmen's compensation laws . . . are applicable to *maritime* service on navigable waters, when, and only when, the service is within exceptions (a), (b) and (c) above."

The present case falls within none of these exceptions. (a) There was nothing local about the contract. (b) The repairs to the hold of the "Moultrie" fitted her for the stowage of overseas cargo. "Repairing a completed ship lying in navigable waters has direct and intimate connection with navigation and commerce . . ." (*John Baizley Iron Works et al.* v. *Span*, 281 U.S. 222, 232 [50 S.Ct. 306, 74 L.Ed. 819, 822].) That being so it follows (c) that the application of state law would directly invade the federal jurisdiction.

In addition to the Teahan case petitioner relies chiefly on *Davis* v. *Department of Labor, etc., supra.* The facts of the Norton and Parker cases, *supra,* are clear-cut. With such federal authorities as these and with such others before us as *Great Lakes etc. Co.* v. *Kierjewski,* 261 U.S. 479 [43 S.Ct. 418, 67 L.Ed. 756]; *Gonsalves* v. *Morse etc. Co.,* 266 U.S. 171 [45 S.Ct. 39, 69 L.Ed. 228], *Robins etc. Co.* v. *Dahl,* 266 U.S. 449 [45 S.Ct. 157, 69 L.Ed. 372], and the Span case, in all of which the workmen were injured while making repairs on a commissioned ship lying in navigable waters, it is not difficult to distinguish the Davis case from the present one. The following language (317 U.S. 253) shows why that was classified as a "twilight zone" case; "Harbor workers and longshoremen employed 'in whole or in part upon the navigable waters' are clearly protected by this Federal Act; but, *employees such as decedent here* occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." (Emphasis added.) Davis was a structural steel worker employed by a contractor engaged in dismantling an abandoned drawbridge spanning a river in the State of Washington—an obstruction to navigation. The facts are comparable with those in *Millers' Indemnity Underwriters* v. *Braud,* 270 U.S. 59 [46 S.Ct. 194, 70 L.Ed. 470], where the workman was a diver submerged in navigable waters, engaged in sawing off the timbers of an abandoned set of launching ways—an obstruction to navigation. His air supply failed, he died of suffocation and it was held that the matter was "of mere local concern and its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law."

Petitioner's case instead of being in the "twilight zone" is definitely on the same side of the line as the numerous cases (some of them cited herein) which have followed the rule which *Southern Pacific Co.* v. *Jensen,* 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086, L.R.A. 1918C 451, Ann.Cas. 1917E 900,

14 N.C.C.A. 597], laid down before the present federal compensation law was enacted, but which has been adhered to ever since in cases arising under that act.

*Los Angeles etc. Co.* v. *Industrial Accident Commission,* 57 Cal.App. 352 [207 P. 416], cited by petitioner, is not in point because there the workman was engaged in the construction of a ship not yet commissioned, hence not in maritime employment (1 Am.Jur. 565-566, *supra*). *Grant Smith-Porter Co.* v. *Rohde,* 257 U.S. 469 [42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008] was such a case and was followed in 57 Cal. App. at 355.

Numerous authorities both federal and state have been cited by both sides but it is not necessary to discuss them all in view of the authorities cited herein, the facts of which are comparable with those in the present case. It is sufficient to refer to the footnote to the Davis case, 317 U.S. 254, 87 L. Ed. 249, where scores of cases on both sides of the question are cited. That note refers also, for state cases on both sides, to the Circuit Court of Appeals' opinion in the Parker case, 116 F.2d 789. It also refers to the excellent review of the subject, entitled *"Workmen's Compensation and the Maritime Law,"* by Professor Stanley Morrison, in 38 Yale Law Journal, 472-502.

The order of the commission is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied February 10, 1949, and petitioner's application for a hearing by the Supreme Court was denied March 10, 1949. Carter, J., voted for a hearing.