[Civ. No. 13927. First Dist., Div. Two. Apr. 28, 1950.]

R. F. BASKIN, a Minor etc., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Stark & Champlin for Petitioner.

T. Groezinger, John A. Rowe, Jr., and R. P. Wisecarver for Respondents.

GOODELL, J.—This proceeding was brought to review an order of the commission which dismissed petitioner's application for compensation on the ground that the case is exclusively within federal jurisdiction.

The cause was before this court some months ago, and on January 11, 1949, we affirmed the commission's order (*Baskin* v. *Industrial Acc. Com.*, 89 Cal.App.2d 632 [201 P.2d 549]). A rehearing was denied and thereafter a hearing by our Supreme Court was denied. Petitioner then sought a writ of certiorari in the Supreme Court of the United States. In granting the writ on October 24, 1949, that court vacated our judgment and remanded the cause to this court ''for reconsideration in the light of *Bethlehem Steel Co.* v. *Moore,* 335 U.S. 874 [69 S.Ct. 239, 93 L.Ed. 417], and *Davis* v. *Department of Labor,* 317 U.S. 249 [63 S.Ct. 225, 87 L.Ed. 246], it appearing that the decision of this court in *Bethlehem Steel Co.* v. *Moore, supra,* affirming the decision of the Supreme Judicial Court of Massachusetts, 323 Mass. 462 [162] [80 N.E.2d 478], was not available to the District Court of Appeal at the time of its consideration of this cause. See *Minnesota* v. *National Tea Co.,* 309 U.S. 551 [6 S.Ct. 676, 84 L.Ed. 920]; *State Tax Commission* v. *Van Cott,* 306 U.S. 511 [59 S.Ct. 605, 83 L.Ed. 950].''

Accordingly the cause was reargued and again submitted. Petitioner was a materialman employed from March, 1943, until December 10, 1945, by respondent Kaiser Company, Inc., at its Shipyard No. 3. His work during that time was entirely on shore (or on ships under construction) with the exception of two or three tours of short duration when he was sent to work aboard ships being repaired.

On December 10, 1945, the S. S. ''William Moultrie'' was undergoing repairs. She was one of three vessels tied up side by side at the shipyard wharf in San Francisco Bay and was the farthest out. A crane on the wharf moved materials from place to place on these ships. One of the holds on the

"Moultrie" was being repaired. The crane's boom could not reach the planks already on board, to move them from one hold to another, and it became necessary to send men aboard to do so. Despite standing instructions that Baskin should not be sent aboard ships under repair, he was ordered onto the "Moultrie" to help, and while there fell down a hold and was seriously and permanently injured.

In 1927 Congress enacted the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. §§ 901-950). Section 902, subd. 4, shows that the act covers persons "employed in maritime employment, in whole or in part, upon the navigable waters of the United States . . ." Section 903(a) provides that "Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States . . . and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law . . ."

Petitioner contends that this language indicates that "Congress made clear its purpose to permit state compensation protection whenever possible . . ." (*Davis* v. *Department of Labor*, 317 U.S. 249, 252 [63 S.Ct. 225, 87 L.Ed. 246]), and states the question presented for decision as follows:

"Only if the state could not constitutionally provide compensation for petitioner's injuries, may the order of respondent Commission be sustained."

It is well settled that ". . . contracts for the building of vessels or ships, or for labor performed, or materials furnished, in their construction, are *not* maritime contracts and *not* cognizable in admiralty, . . ." but that "*After a vessel has been completed and put in commission, contracts . . . to repair her . . . are maritime in their nature . . .*" (1 Am. Jur. pp. 565-566; *New Bedford Dry Dock Co.* v. *Purdy*, 258 U.S. 96 [42 S.Ct. 243, 66 L.Ed. 482].) (Emphasis added.)

The "Moultrie" was in commission and undergoing repairs hence the work on her was being done under a maritime contract.

In developing their contention that this case is within the state and not the federal act, counsel for petitioner argue that Baskin was not a carpenter; that he did nothing by way of attaching or affixing lumber or other materials to the structure of the vessel, but was a mere helper carrying planks from one

hold to another, where a skilled joiner was to make them a part of the ship. The answer to this is that he was just as much engaged in the performance of his employer's maritime contract as was the joiner who did the carpentry, albeit of humbler station.

With respect to the difference in status, noted above, between a ship under construction and a commissioned ship under repair, petitioner points out that he was paid at two different rates, i.e., $1.20 an hour while on "new construction" and $1.34 while on repair work, and that on the day of his injury he was paid at the "new construction" rate. This is urged in aid of petitioner's broader point that his work was non-maritime, local and predominantly on shore; that his infrequent assignments to ships under repair were of but a quarter-hour to an hour's duration, hence that his work on shipboard when injured was a mere deviation from his regular non-maritime shore job, bringing the case within the *de minimis* rule.

When this case was before us the first time we reached the conclusion that such cases as *Northern Coal & Dock Co.* v. *Strand,* 278 U.S. 142, 144 [49 S.Ct. 88, 73 L.Ed. 232, 234]; *John Baizley Iron Works* v. *Span,* 281 U.S. 222, 232 [50 S.Ct. 306, 74 L.Ed. 819, 822]; *Employers' Liability Assurance Corp.* v. *Cook,* 281 U.S. 233, 236 [50 S.Ct. 308, 74 L.Ed. 823, 824], and *Parker* v. *Motor Boat Sales, Inc.,* 314 U.S. 244 [62 S.Ct. 221, 86 L.Ed. 184], compelled an affirmance of the commission's order.

As is pointed out in the mandate directed to this court, the case of *Bethlehem Steel Co.* v. *Moore,* 335 U.S. 874 [69 S.Ct. 239, 93 L.Ed 417], affirming *Moore's Case,* 323 Mass. 162 [80 N.E.2d 478], was not available to us when we had the case under consideration. That case was decided on December 6, 1948, without opinion.

In Moore's Case the employee was injured while aboard a vessel in a dry dock floating in navigable water. He was a rigger whose work was variously on piers, dry docks and ships. There was conflicting testimony as to the proportion of his time spent on the piers and the proportion spent on the dry docks and vessels. The board found that the major portion of his work was on the piers but that occasionally it took him aboard vessels. The floating dry dock was fastened to the pier to which it was berthed by bolts spanning a distance of three or four feet from the pier itself.

In Moore's Case the Supreme Judicial Court of Massa-

chusetts said (80 N.E.2d 479-481) : "We start with the established proposition that the Massachusetts Workmen's Compensation Law covers all longshore maritime injuries not excluded by the constitutional grant of admiralty and maritime jurisdiction to the United States. [Citations.]

"But since the decision in *Southern Pac. Co.* v. *Jensen,* 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086, L.R.A. 1918C 451, Ann.Cas. 1917E 900], it has been necessary to observe carefully the line of demarcation between State and Federal authority as defined by a series of decisions of the Supreme Court of the United States following that case. In *O'Hara's Case,* 248 Mass. 31 [142 N.E. 844], decided in 1924, it appeared that the two injured employees were, at the times of their respective injuries, working on dry docks, one of which was floating and moored to piers and the other of which rested upon and was attached to land, and that each employee was engaged in the general work of repairing a previously completed vessel. The circumstances cannot, in our opinion, be distinguished in any material respect from those presented in the case at bar. This court reviewed at length the Federal decisions up to that time and stated as its conclusion the following, 'The principle deducible, as we think, from all these decisions, is that the rights and liabilities of parties with respect to injuries received by a workman engaged in repair of a completed vessel lying in navigable waters are governed by maritime law, because the work had direct relation to navigation and the injury occurs on navigable waters.' 248 Mass. at page 37, 142 N.E. at page 847. It was held that the State act did not apply. This court further held that a dry dock designed to receive vessels floating in navigable waters is itself part of the navigable waters and subject to admiralty jurisdiction, citing *The Steamship Jefferson,* 215 U.S. 130, 142, 143 [30 S.Ct. 54, 54 L.Ed. 125, 17 Ann.Cas. 907] ; and *The Robert W. Parsons,* 191 U.S. 17, 33, 34 [24 S.Ct. 8, 48 L.Ed. 73]. See to the same effect *Gonsalves* v. *Morse Dry Dock & Repair Co.,* 266 U.S. 171 [45 S.Ct. 39, 69 L.Ed. 228]. A decision generally similar to that in O'Hara's Case, had also been made by this court in *Ahern's Case,* 247 Mass. 512 [142 N.E. 703]. A repair job on a previously completed vessel has been held to fall within Federal jurisdiction, even though the repairs require the laying up of the vessel for a long period, and even though they entirely change the character of the vessel and the uses for which it is adapted. *New Bedford Dry*

*Dock Co.* v. *Purdy,* 258 U.S. 96 [42 S.Ct. 243, 66 L.Ed. 482] ;
*Hillcone Steamship Co.* v. *Steffen* (9 Cir.), 136 F.2d 965, 967.
A different rule prevails where the work is being done in the
construction of a new vessel, even though in part performed
on navigable water, since a contract for new construction is
not maritime in character and has no direct relation to naviga-
tion or commerce. Such work remains within State jurisdic-
tion. *Thames Towboat Co.* v. *The Francis McDonald,* 254 U.S.
242 [41 S.Ct. 65, 65 L.Ed. 245] ; *Grant Smith-Porter Ship Co.*
v. *Rohde,* 257 U.S. 469 [42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R.
1008] ; *Millers' Indem. Underwriters* v. *Braud,* 270 U.S. 59,
63-64 [46 S.Ct. 194, 70 L.Ed. 470].

"Decisions of the Supreme Court of the United States since
O'Hara's Case was decided by this court were in accord with
the rule there laid down until very recently. *Robins Dry
Dock & Repair Co.* v. *Dahl,* 266 U.S. 449, 457 [45 S.Ct. 157,
69 L.Ed. 372] ; *John Baizley Iron Works* v. *Span,* 281 U.S.
222 [50 S.Ct. 306, 74 L.Ed. 819]. If the matter rested at this
point we should conclude that the decisions above cited fur-
nished the necessary guide and required us to dismiss the claim
under the State compensation law, as was done in O'Hara's
Case.

"But the situation was definitely altered by the decision of
the Supreme Court of the United States in *Davis* v. *Depart-
ment of Labor & Industries of Washington,* 317 U.S. 249 [63
S.Ct. 225, 87 L.Ed. 246], written by Mr. Justice Black in
1942. That was not a case of repairs upon a previously com-
pleted vessel. It was a case where the employee fell from a
barge where he was examining steel that he had just helped to
cut from a bridge which was in process of being dismantled.
The significance of the case, however, lies in its obvious attempt
to set up a means of escape from the difficulties involved in
drawing the line between State and Federal Authority under
the doctrine of the Jensen case. The Davis case recognizes a
presumptive quality in the decisions of Federal authorities
under the longshoremen's and harbor workers' act and a
presumption of constitutionality of the State acts as applied to
particular cases. The decision does not overrule the Jensen
case. It does, however, at least as appraised by Mr. Justice
Frankfurter, who concurred in it, and by Chief Justice Stone,
who dissented from it, create a 'twilight zone' or an area of
doubt within which the two acts overlap and the injured work-
man may recover under either of them. It would seem, there-
fore, that although apparently some heed must still be paid

to the line between State and Federal authority as laïd down in the cases following the Jensen case, the most important question has now become the fixing of the boundaries of the new 'twilight zone,' and for this the case gives us no rule or test other than the indefinable and subjective test of doubt. Mr. Justice Frankfurter says that 'Theoretic illogic is inevitable so long as the employee . . . is permitted to recover' at his choice under either act. 317 U.S. at page 259, 63 S.Ct. at page 230. Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about 'illogic,' and to regard the Davis case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other. We can see no other manner in which the Davis case can be given the effect that we must suppose the court intended it should have, and we must assume that the court intends to follow that case in the future.''

In our first opinion we gave careful consideration to *Davis* v. *Department of Labor, supra,* for it was on that case that the petitioner chiefly relied. We thought, however, that it was ''not difficult to distinguish the Davis case from the present one'' and gave the reasons (at 89 Cal.App.2d 637, 201 P.2d 552-3), based on decisions of the Supreme Court of the United States, why we thought our case was not within the ''twilight zone.'' The affirmance in *Bethlehem Steel Co.* v. *Moore,* 335 U.S. 874, *supra,* of *Moore's Case,* 323 Mass. 162, *supra,* plainly indicates, although no opinion was filed, that the Supreme Court considers the present case within the ''twilight zone.''

The Massachusetts court in *Moore's Case* took a different view of the Davis case than we took, giving it more latitude than we thought it had, but the affirmance, in 335 U.S. 874, based on the authority of the Davis case, shows theirs was the correct view.

It cannot be gainsaid that the facts in Moore's Case and in Baskin's are very similar. In both instances the major part of the employee's work was on shore, and in both instances

he was injured while working on a vessel in commission, in navigable waters, and being repaired under a maritime contract.

Our clear duty is to reverse our former holding in this case, on the authority of *Bethlehem Steel Co.* v. *Moore, supra,* and *Davis* v. *Department of Labor, supra.*

Accordingly the order of the respondent commission is annulled with the direction to proceed with a hearing and determination of petitioner's application.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied May 27, 1950, and respondents' petition for a hearing by the Supreme Court was denied June 26, 1950.