SIMMIE LANE, PETITIONER-APPELLANT, v. UNIVERSAL STEVEDORING COMPANY, RESPONDENT-APPELLEE.

Argued February 21, 1973—Decided May 7, 1973.

*Mr. Samuel E. Bass* argued the cause for the petitioner-appellant (*Messrs. Freeman & Bass,* attorneys).

*Mr. William A. Davenport* argued the cause for the respondent-appellee.

The opinion of the Court was delivered by

PROCTOR, J. The issue in this case is whether New Jersey may constitutionally provide workmen's compensation benefits to a workman usually employed on land who is injured while aboard a vessel on the navigable waters of the United States.

Petitioner Simmie Lane filed a claim against his employer, respondent Universal Stevedoring Company, in the Division of Workmen's Compensation for benefits under *N. J. S. A.* 34:15–1 *et seq.* The Division determined that it was without jurisdiction because Lane was injured while working as a longshoreman in the hold of a ship on navigable waters of the United States, and dismissed his claim on the basis that his exclusive remedy was under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 *U. S. C. A.* § 901 *et seq.* On petitioner's appeal to the County Court, the Division's dismissal of the claim was reversed on the ground that there was "sufficient local interest" to support a state compensation remedy. Respondent then appealed to the Appellate Division; that court reversed the judgment of the County Court in an unreported opinion, and held that petitioner's exclusive remedy was under the federal act. We granted certification. 62 *N. J.* 189 (1972).

The facts are not in dispute as petitioner was the only witness to testify. He was a resident of this State, and was

employed by the respondent at Port Newark. His principal duty was driving and operating a forklift truck. He said that "when the guys discharge the cargo, I drive a hi-lo [forklift truck], and I runs it into the warehouse, from the warehouse to the dock." He testified that usually he drove the truck on land, "mostly" in a warehouse located in the dock area. However, sometimes his foreman would direct him to drive the truck in the holds of ships moored to the dock, but these occasions were "very seldom."

On October 26, 1967, the petitioner was working on land when his foreman ordered him to go into the hold of a ship in order to show an inexperienced employee how to unhook cargo. Petitioner testified that after entering the hold, he was injured in the following manner:

"When I showed the guy how to unhook the draft and the winchman pulled up on the winch, and the things they call the bows swung back and ripped my coveralls and hit me in the lower part of my groin."

Although petitioner stated that he belonged to the "ILA" (International Longshoremen's Association), he did not know what these letters stood for and he did not know what a "stevedore" was. According to petitioner, he worked as a "laborer," "machine operator," and "driver."

The relatively simple factual situation of this case falls within a confusing area of the law concerning the constitutional limits of state and federal jurisdiction. The Constitution of the United States extends the federal judicial power "to all Cases of admiralty and maritime Jurisdiction." Art. III, § 2, cl.1. In marking the constitutional boundary for the application of state law in cases involving employees whose work consists of duties both on land and on navigable waters, the starting point is the United States Supreme Court's 1917 decision in *Southern Pacific Co. v. Jensen*, 244 *U. S.* 205, 37 *S. Ct.* 524, 61 *L. Ed.* 1086. There the Court held that the Workmen's Compensation Act of New York could not constitutionally be applied to provide benefits to

the widow of a longshoreman who was killed aboard a ship on navigable waters while engaged in unloading cargo. The Court stated that the decedent's employment was maritime in nature, and the place of the injury, on navigable waters, was also maritime. Such an application of state law, the Court said, would interfere with the proper harmony and uniformity of the maritime law in its international and interstate relations. 244 *U. S.* at 216, 37 S. Ct. at 529, 61 *L. Ed.* at 1098. However, the Court later held that if a longshoreman injured while loading cargo happened to be standing on land or extensions thereto such as docks, state law could constitutionally apply. *State Industrial Comm'n of N. Y. v. Nordenholt Corp.*, 259 *U. S.* 263, 42 S. Ct. 473, 66 *L. Ed.* 933 (1922).

By restricting the application of state workmen's compensation law to the landward side of the water's edge, *Jensen* led to the harsh result of denying compensation for amphibious workers injured while on navigable waters because at that time there was no federal compensation act. Congressional efforts to alleviate this situation by legislation empowering the States to grant compensation coverage to workers injured on navigable waters were twice struck down by the Supreme Court as unconstitutional delegations of federal power to the states. *Knickerbocker Ice Co. v. Stewart*, 253 *U. S.* 149, 40 S. Ct. 438, 64 *L. Ed.* 834 (1920); *State of Washington v. W. C. Dawson & Co.*, 264 *U. S.* 219, 44 S. Ct. 302, 68 *L. Ed.* 646 (1924). Finally, responding to the Supreme Court's suggestion in *Dawson* that congressional legislation conferring federal benefits to those workers whose injuries were beyond state jurisdiction would be constitutional, Congress in 1927 passed the Longshoremen's and Harbor Workers' Compensation Act. 33 *U. S. C. A.* § 901 *et seq.* This Act provided a federal compensation remedy for workers injured on navigable waters" . . . if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." 33 *U. S. C. A.* § 903(a). Thus, it seems clear that Congress

contemplated that the states would continue to apply their own laws to amphibious workers to the maximum permissible extent, but intended that the federal legislation should cover those specific situations where the Constitution prohibited the exercise of state jurisdiction. See *Gilmore & Black, The Law of Admiralty,* p. 346 (1957); Morrison, "Workmen's Compensation and the Maritime Law," 38 *Yale L. J.* 472, 500 (1929).

In decisions after *Jensen,* the Supreme Court itself modified *Jensen's* apparent marking of the water's edge as the dividing line between state and federal jurisdiction. In *Grant Smith-Porter Ship Co. v. Rohde,* 257 *U. S.* 469, 42 S. Ct. 157, 66 *L. Ed.* 321 (1922), the Court held that if the nature of the injured employee's work was of sufficient "local" concern, the state compensation act could apply even though the injury occurred on navigable waters. The Court's thesis was that such an application of state law would not work material prejudice to the federal maritime law. In *Grant Smith-Porter Ship Co.,* state benefits were accordingly permitted for an injury which occurred on navigable waters during construction work on new vessels on the ground that such work was sufficiently "local" to sustain the exercise of state jurisdiction. *Id.* See also *Western Fuel Co. v. Garcia,* 257 *U. S.* 233, 42 S. Ct. 89, 66 *L. Ed.* 210 (1921). On the other hand, the Court found that workers who were injured while engaged in repair work on completed vessels already in navigation were involved in "federal" activity to which state law could not constitutionally be applied. *E. g., Robins Dry Dock & Repair Co. v. Dahl,* 266 *U. S.* 449, 45 S. Ct. 157, 69 *L. Ed.* 372 (1925). Thus, the "maritime but local" theory divided cases into "federal" and "state" categories on the purported basis that certain types of work were "maritime," and exclusively within the coverage of federal law, or "maritime but local," and consequently subject to state jurisdiction.

Yet the "maritime but local" doctrine failed to establish clear guidelines as to when a particular injury on navigable

waters was sufficiently "local" to permit state benefits. After the passage of the Longshoremen's Act in 1927 which incorporated the maritime but local theory through its provision in § 903(a) that federal benefits were available only where awards could not "validly" be given by the states, the employee injured on navigable waters was faced with the new problem of divining whether the character of his employment was "local" or "national" in order to determine whether he was confined to state or federal benefits. If he chose the wrong jurisdiction's law, he would incur needless expense and delay in litigation, and also risk the loss of his rights by the running of the statute of limitations in the jurisdiction in which he should have proceeded. See *Robertson, Admiralty and Federalism, pp.* 207–208 (1970); *Baer, Admiralty Law of the Supreme Court,* p. 90 (1963).

To alleviate the uncertainty inherent in the "maritime but local" doctrine, the Supreme Court in *Davis v. Dep't of Labor & Industries,* 317 *U. S.* 249, 63 S. Ct. 225, 87 *L.* Ed. 246 (1942), adopted what came to be known as the "twilight zone" rule. There a structural steelworker was employed by a firm which was engaged in dismantling a bridge over a navigable river; the worker's duties were to direct the placing of steel from the bridge onto a barge moored beneath the bridge and to "burn off" any metal which would interfere with the loading of the barge. During the course of his work, he fell from the barge and was drowned. The Washington Supreme Court held that the decedent's widow was barred from receiving state benefits on the ground that her husband's work at the time of death was essentially that of a longshoreman loading cargo, a type of work which had been held solely maritime in nature and thus exclusively within federal jurisdiction. 12 *Wash.* 2d 349, 121 *P.* 2d 365, 367 (1942). On review of the Washington Supreme Court's determination, the United States Supreme Court reversed and held that compensation could be awarded under the state act. In an opinion written by Justice Black, the Court noted that it had been "unable to give

any guiding, definite rule to determine the extent of state power in advance of litigation," and that the situation under the maritime but local doctrine had thus resulted in "much serious confusion." 317 *U. S.* at 253, 254, 63 S. Ct. at 227, 87 *L. Ed.* at 248, 249. The Court refrained from extending the maritime but local doctrine as support for its decision, but held that workers like the decedent in *Davis* who had both state and federal elements in their employment were in a ". . . twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements." 317 *U. S.* at 256, 63 S. Ct. at 229, 87 *L. Ed.* at 250. Workers who were within this "shadowy area" where "at some undefined and undefinable point" state laws could validly provide compensation could proceed under either federal or state law, and their choice would be presumed correct. 317 *U. S.* at 253, 256–257, 63 S. Ct. at 227, 87 *L. Ed.* at 248, 250–251. The Court stated that an award of federal compensation would be sustained on the basis of the presumption of correctness accorded to federal administrative agency determinations; on the other hand, if the worker chose to apply for state benefits, his choice would be upheld on the ground that the application of state law would be presumed constitutional. Thus, in equivocal fact situations the claimant's choice of either federal or state law would be upheld. See Rodes, "Workmen's Compensation for Maritime Employees: Obscurity in the Twilight Zone," 68 *Harv. L. Rev.* 637, 640–41 (1955).

Subsequent decisions confronted the new problem of what factual situations were sufficiently uncertain so as to be included within the twilight zone. In *Moores's Case,* 323 *Mass.* 162, 80 *N. E. 2d* 478 (1948), the Supreme Judicial Court of Massachusetts considered whether state jurisdiction could constitutionally extend to employments which under decisions prior to *Davis* had been considered exclusively within the federal domain. In *Moores's Case* a land-based employee was injured while he was repairing a vessel on

navigable water. Under the pre-*Davis* cases, repair work on a completed vessel in navigation had been found to affect commerce and thus injuries to workers engaged in such repair had been held exclusively within federal jurisdiction. *E. g., John Baizley Iron Works v. Span,* 281 *U. S.* 222, 50 S. Ct. 306, 74 *L. Ed.* 819 (1930). In his opinion for the Supreme Judicial Court of Massachusetts, Chief Justice Qua recognized that the pre-*Davis* cases held that the claim was beyond the scope of state jurisdiction, but he nonetheless affirmed an award of state benefits, interpreting *Davis* as establishing a wide area where the choice of either federal or state jurisdiction would be sustained. He said:

". . . [A]lthough apparently some heed must still be paid to the line between State and Federal authority as laid down in the cases following the Jensen case, the most important question has now become the fixing of the boundaries of the new 'twilight zone,' and for this the case gives us no rule or test other than the indefinable and subjective test of doubt. Mr. Justice Frankfurter says [concurring in *Davis*] that 'Theoretic illogic is inevitable so long as the employee * * * is permitted to recover' at his choice under either act. 317 U. S. at page 259, 63 S. Ct. at page 230. Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about 'illogic,' and to regard the Davis case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other. We can see no other manner in which the Davis case can be given the effect that we must suppose the court intended it should have, and we must assume that the court intends to follow that case in the future." 80 *N. E.* 2*d* at 480–481.

In a *per curiam* memorandum decision, the United States Supreme Court affirmed *sub nom. Bethlehem Steel Co. v. Moore,* 335 *U. S.* 874, 69 S. Ct. 239, 93 *L. Ed.* 417 (1948).

The United States Supreme Court's apparent approval of Chief Justice Qua's interpretation of *Davis* as a "revolutionary decision" giving a wide scope to the exercise of

state jurisdiction was further indicated in *Baskin v. Industrial Accident Comm'n,* 338 *U. S.* 854, 70 S. Ct. 99, 94 *L. Ed.* 523 (1949). There the claimant was a shipyard worker most of whose work was on shore. He was hurt on board a vessle on navigable waters while engaged in repairing the ship. But unlike the Massachusetts Supreme Judicial Court in *Moores's Case,* the California court held that the injury on navigable waters was not within the coverage of the state compensation act but was exclusively within federal jurisdiction. 89 *Cal. App.* 2d 632, 201 *P.* 2d 549 (Dist. Ct. App. 1949). The United States Supreme Court reversed in a *per curiam* decision, and remanded to the California court for reconsideration in light of *Moores* and *Davis.* 338 *U. S.* 854, 70 S. Ct. 99, 94 *L. Ed.* 523. On remand, the California court concluded that its previous narrow interpretation of the scope of permissible state jurisdiction under the "twilight zone" had been rejected by the United States Supreme Court in favor of the Massachusetts Supreme Judicial Court's expansive view of the "twilight zone." The California court accordingly held that state benefits could be awarded to the claimant, 97 *Cal. App.* 2d 257, 217 *P.* 2d 733 (Dist. Ct. App. 1950), and the United States Supreme Court, again citing *Moores* and *Davis,* then affirmed *per curiam sub nom. Kaiser Co. v. Baskin,* 340 *U. S.* 886, 71 S. Ct. 208, 95 *L. Ed.* 643 (1950). The *Baskin* case was more significant than *Moores's Case* since in the latter case the Supreme Court had simply declined to upset a state court's determination that a particular situation fit within the twilight zone, while in *Baskin* the state court was in effect told to take a broad view of the twilight zone and award compensation where benefits previously had been denied. Finally, in the last of this series of *per curiam* decisions, *Hahn v. Ross Island Sand & Gravel Co.,* 358 *U. S.* 272, 79 S. Ct. 266, 3 *L. Ed.* 2d 292 (1959), the Supreme Court again reversed a state court's determination that federal law was exclusive. There a worker who was employed by a sand and gravel company as an "oiler" for machinery on a dredge was injured on navigable

waters while engaged in transferring a bin from one barge to another. The Court held that he was in the twilight zone, and that under *Davis* he accordingly had an "election" of a federal or state remedy. 358 *U. S.* at 273, 79 *S. Ct.* at 267, 3 *L. Ed. 2d* at 293. See also the recent decision in *Askew v. The American Waterways Operators, Inc.,* 411 *U. S.* 325, 93 S. Ct. 1590, 36 L. Ed. 2d 280 (1973) where the Supreme Court, in the course of holding that Florida could constitutionally impose strict liability for oil-spill damage caused by ships on navigable waters, stated that *Jensen and Knickerbocker Ice, supra,* "have been confined to their facts, *viz.* to suits relating to the relationship of vessels, plying the high seas and our navigable waters, to their crews."

This Court last considered the extent of the constitutional reach of our state workmen's compensation statute over injuries occurring on navigable waters in *Hansen v. Perth Amboy Dry Dock Co.,* 48 *N. J.* 389 (1967), *cert.* den. 387 *U. S.* 934, 87 S. Ct. 2055, 18 *L. Ed. 2d* 993 (1967), and *Szumski v. Dale Boat Yards, Inc.,* 48 *N. J.* 401 (1967), *cert.* den. 387 *U. S.* 944, 87 S. Ct. 2077, 18 *L. Ed. 2d* 1331 (1967). In *Hansen,* the petitioner was painting a ship under construction in a dry dock on navigable waters when the ladder on which he was standing broke, causing him to fall and suffer injuries. In *Szumski,* an "all-around" boatyard worker had a fatal heart attack while at sea on a small boat he was delivering to his employer's boatyard. After reviewing the United States Supreme Court's decisions in this area, we said in *Hansen* with regard to the permissible scope of state jurisdiction:

"The question as we understand it is not whether the ship was being constructed or being repaired but whether the *employment relation* (as distinguished from the work being done at the time of the accident) was sufficiently local that the state has a valid interest in providing its compensation remedy or whether the employment relation was so characteristically maritime that application of state law would work material prejudice to the general maritime law." 48 *N. J.* at 396 (original emphasis).

Applying this test to the factual situations in *Hansen and Szumski,* we concluded that in each case the employment relation was sufficiently local to include both workers within the twilight zone. In *Hansen,* we noted that the petitioner worked several weeks each year exclusively on land, that his employer had substantial physical assets in this state, and that the employment contract itself was based in New Jersey. 48 *N. J.* at 397. Similarly, in *Szumski* we pointed out that the decedent was a land-based workman with almost all his duties performed on land, his employer had substantial physical assets in this state, and the employment contract was not transitory. 48 *N. J.* at 406.

Having determined that New Jersey did have significant contacts with both claimants, we then held that there was no constitutional barrier to the award of state benefits since there was no showing in either case that such awards would substantially interfere with the federal maritime interest. Thus, in *Hansen,* we said:

"The strong interest of New Jersey in seeing that its injured employees obtain the maximum compensation benefits available under the state law yields to federal exclusivity only when the grant of such state benefits would actually work substantial prejudice to the national maritime law. No such prejudice has here been shown." 48 *N. J.* at 400.

We are not persuaded in the present case to depart from the reasons which led us to sustain state jurisdiction in *Hansen* and *Szumski.* Here the petitioner's work was primarily confined to moving cargo between the dock and the warehouse, both areas which are clearly within permissible state jurisdiction. He was a resident of this state, and his employment relation with the respondent focused on the operations which respondent conducted on land in this state. His duties seem essentially indistinguishable from those of similar employees who operate forklift trucks at inland locations throughout this state. In view of the primarily local character of his employment, we do not believe that peti-

tioner left the protection of state law behind when he was ordered by his employer to perform the brief task over navigable waters during which he suffered injury.

Respondent has not suggested any detrimental effect which a state recovery here would have upon the federal maritime interest. In hiring this employee, respondent must have realized that the nature of his duties would require insurance coverage under the state workmen's compensation scheme; indeed, since most of those duties were confined to land, the respondent's most likely expectation would have been that any injury sustained by the employee would have come within state coverage.[1] In any event, as a practical matter amphibious employees are normally insured by employers under both federal and state compensation plans since it is impossible to predict where an injury will occur, and the additional premium for such dual coverage is minimal. See *Hansen v. Perth Amboy Dry Dock Co., supra,* 48 *N. J.* at 398 and authorities cited therein. See also *Michigan Mutual Liability Co. v. Arrien,* 233 *F. Supp.* 496, 501

---

[1] A recent amendment to the Longshoremen's Act, P. L. No. 92–576, effective November 1972, extends federal coverage to maritime workers who are injured while on the dock or adjoining areas customarily used by the employer in loading, unloading, building or repair of vessels, and thus nullifies a prior Supreme Court decision which held that the Act's limitation to injuries occurring on "navigable waters" precluded its extension to injuries sustained on land. See *Nacirema Operating Co. v. Johnson,* 396 *U. S.* 212, 90 S. Ct. 347, 24 *L. Ed.* 2d 371 (1969). See generally Duffy, "The New U. S. Longshoremen's Compensation Act," 96 *N. J. L. J.* 93 (1973). The new amendment may raise a question concerning whether Congress has intended to preempt the field of compensation for maritime workers who are injured on land. See *Victory Carriers, Inc. v. Law,* 404 *U. S.* 202, 212, 92 S. Ct. 418, 425, 30 *L. Ed.* 2d 383, 391 (1971). We recognize that if it is held that state law has been preempted for amphibious workers injured on land, it can be argued *a fortiori* that such preemption would also extend to injuries occurring on navigable waters. However, in the present case we need not consider whether the new amendment will affect the previously recognized scope of state workmen's compensation coverage to injured harborworkers because the petitioner was injured well before the effective date of the amendment.

(S. D. N. Y. 1964), aff'd 344 *F*. *2d* 640, 647 (2d Cir. 1965), *cert.* den. 382 *U. S*. 835, 86 S. Ct. 80, 15 *L. Ed. 2d* 78 (1965); Gisevius & Leppert, "Maritime Injury Problems: Admiralty versus State Jurisdiction," 12 *Loyola L. Rev.* 57, 71 (1965); Ackerman, "The Twilight Zone," 93 *N. J. L. J.* 773, 781 (1970).

Respondent relies heavily on the Appellate Division's decision in *Gaddies v. Trenton Marine Terminal, Inc.,* 86 *N. J. Super.* 125 (App. Div. 1965). In *Gaddies* the claimant worked most of the time on a dock and in warehouses as a "stevedore-laborer" and only "occasionally" on board ships. He was injured aboard a ship moored at the dock in navigable waters while helping to unload bags of cement. The Appellate Division affirmed the dismissal of his claim for workmen's compensation benefits, stating that an injury to a stevedore which occurred on navigable waters during the course of loading or unloading a ship was maritime in nature, and therefore the exclusive remedy was under federal law. 86 *N. J. Super.* at 128–131.

In his treatise, Dean Larson criticizes *Gaddies,* and suggests that it is inconsistent with the "overall approach and tone" of *Hansen.* He points out that New Jersey decisions prior to *Gaddies* had recognized that since the *Moores* and *Baskin* decisions repairs to completed ships were within the "twilight zone" of concurrent jurisdiction. See *Allisot v. Federal Shipbuilding & Drydock Co.,* 4 *N. J.* 445 (1950); *Dunleavy v. Tietjen & Lang Dry Docks,* 17 *N. J. Super.* 76 (Cty. Ct. 1951), aff'd o. b. 20 *N. J. Super.* 486 (App. Div. 1952). Although Larson notes that the *Gaddies* court attempted to distinguish between the repair and loading cases, he argues persuasively that such a distinction "misses the principle" involved in the *Moores* and *Baskin* decisions; Larson asserts that there is no reason to place the unloading of a ship in a different jurisdictional category than that of repairing a ship:

"[E]ither categories previously held federal are outside the twilight zone or they are not. Both ship repair and ship loading had equally been held federal. Once that line has been broken by a holding that a ship repair case can be treated as a 'twilight zone' case, there is no further ground for distinguishing an unloading case." 3 *Larson, Workmen's Compensation Law*, § 89.40, p. 444, n. 55 (1971).

We agree with Larson that in principle unloading a ship is no more maritime in nature than repairing a ship; since the Supreme Court held in the *Moores* and *Baskin* decisions that repairing a ship was in the twilight zone where the employee's choice of state or federal benefits would be upheld, we think it is contrary to those decisions to deny the same choice to other workers who are injured in the course of what were formerly viewed as exclusively "federal" activities.

While the facts of *Hansen* did not require us to overrule *Gaddies,* we agree with Larson that "it is difficult to see how *Gaddies* can survive in view of the overall approach and tone of *Hansen." Larson, supra* § 89.40, p. 444, n. 55. In our view the approach taken in *Hansen, Szumski,* and the present case is more consistent than *Gaddies* with the later decisions of the United States Supreme Court.

The *Davis, Moores, Baskin,* and *Hahn* decisions established that the determination whether state law could constitutionally apply to injuries on navigable waters was not to be made on the basis of the rigid categorization of employees or work duties which had characterized the prior cases. Unlike the longshoreman in *Jensen,* whose duties required him to pass frequently from dock to the vessel, in the present case the petitioner's employment relation with the respondent primarily involved activities on land, and it was "very seldom" that he was directed to board a ship. Under these circumstances, we think a realistic view of the employment relation shows sufficient connection with New Jersey to sustain an award of state benefits.

Respondent also relies on *Calbeck v. Travelers Insurance Company,* 370 *U. S.* 114, 82 S. Ct. 1196, 8 *L. Ed. 2d* 368

(1962), but as we said in *Hansen, supra,* 48 *N. J.* at 399, nothing in that case indicates a limitation on state jurisdiction to compensate amphibious workers for injuries on navigable waters. There the Supreme Court held that the Longshoremen's Act could provide benefits for all injuries sustained by workers on navigable waters whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law. 370 *U. S.* at 126–127, 82 S. Ct. at 1203–1204, 8 *L. Ed.* 2d at 377. *Calbeck* did not hold that a state compensation act was inapplicable to injuries sustained by amphibious workers over navigable waters. Indeed, the Court said that its holding was "entirely consistent" with *Davis,* 370 *U. S.* at 127, 82 S. Ct. at 1203, 8 *L. Ed.* 2d at 377. Consequently, we do not believe that *Calbeck* lessens in any way a state's power under the twilight zone theory to compensate amphibious workers. See *Arp v. Maryland Casualty Co.,* 170 *So.* 2d 166 (La. App. Ct. 1964), aff'd 247 *La.* 411, 171 *So.* 2d 666 (1965); 3 *Larson, Workmen's Compensation Law, supra,* § 89.40, pp. 447–448; *Robertson, Admiralty and Federalism, supra,* pp. 219, 221; Gisevius & Leppert, 12 *Loyola L. Rev., supra* at 67–74 (1966); cf. *Holland v. Harrison Bros. Dry Dock & Repair Yard, Inc.,* 306 *F.* 2d 369, 372 (5th Cir. 1962). But see *Atlas Iron and Metal Company v. Hesser,* 177 So. 2d 199 (Fla. Sup. Ct. 1965).

█ █ It must be remembered that the objective of both state and federal compensation plans is to provide prompt payment for the worker's injuries with a minimum of litigation. While under *Calbeck* petitioner's claim could have been brought under the federal law, we find that the employment relation had substantial connection with New Jersey. Since the respondent has not shown that the application of our state workmen's compensation law would actually prejudice the uniformity of the federal maritime law, we hold that the petitioner is entitled to apply for New Jersey workmen's compensation benefits.

For the reasons expressed above, the judgment of the Appellate Division is reversed and the cause is remanded to the Division of Workmen's Compensation for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL, MOUNTAIN and SULLIVAN, and Judge CONFORD—7.

*For affirmance*—None.